## COMMISSIONER OF INTERNAL REVE-NUE v. FREUND (two cases).

### Nos. 6634, 6635.

Circuit Court of Appeals, Third Circuit.

June 22, 1938.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Lucius A. Buck, Sp. Assts. to Atty. Gen., all of Washington, D. C., for petitioner.

Arnold R. Baar, of Chicago, Ill., for respondents.

Before BUFFINGTON and BIGGS, Circuit Judges, and MARIS, District Judge.

MARIS, District Judge.

These are petitions by the Commissioner of Internal Revenue to review decisions of the Board of Tax Appeals determining that there was no deficiency in income tax for the year 1930 in the cases of J. de S. Freund and Lillian M. Freund, his wife (hereinafter called Mrs. Freund), respectively. The two cases were considered by the Board in one opinion and will be so considered here. The Board found the relevant facts to be substantially as follows:

In 1930 Freund was the owner of 154 shares of preferred stock and 770 shares of common stock of the American Cement Tile Manufacturing Company (hereinafter called the American Company). This stock was acquired by him in the two years prior to 1930 at an aggregate cost of $54,086 80. At the same time Mrs. Freund owned 279 shares of preferred stock and 1,395 shares of common stock of the American Company, part of which she had received in 1930 as a gift from I. L. Myers, who had owned and held it for more than two years prior to 1930, and the remainder she had owned and held for more than two years. Her cost basis was $74,956.26.

The American Company was a Pennsylvania corporation with its principal office in Pittsburgh. It was engaged in the manufacture and sale of cement tile and kindred products. In addition to Freund and Mrs. Freund there were only four other stockholders of the American Company. The capital stock was 1,000 shares of preferred and 5,000 shares of common—6,000 shares in all. The Federal Cement Tile Company (hereinafter called the Federal Company) was an Illinois corporation with its principal office in Chicago and was also engaged in the cement tile business.

The Federal Company desired to take over the business of the American Company and the assets employed in that business, with certain exceptions. The stockholders of the American Company, including Freund and Mrs. Freund, entered into an agreement with the Federal Company under date of September 4, 1930, in order to effectuate such a transfer. The plan as set forth in this agreement may be briefly outlined as follows: A new corporation, the American Liquidation Company (hereinafter called the Delaware Com-

pany), was to be organized by the stockholders of the American Company. The American Company was to convey to the Delaware Company certain assets, hereinafter referred to as "fixed assets," consisting of lands, buildings, machinery, equipment, patents, etc., and also certain other assets, hereinafter referred to as "excepted assets," comprising some investments, a life insurance policy and some doubtful accounts receivable. In return for these "fixed assets" and "excepted assets" the American Company was to receive 1,900 shares of the capital stock of the Delaware Company. The inventories, accounts receivable and other assets, hereinafter referred to as the "current assets," were to be retained by the American Company.

The American Company and the Delaware Company then formulated what was designated as "a plan of reorganization." This plan provided that the American Company should reduce its capital stock from 6,000 shares to 3,000 shares, all common, having a par value of $100 per share. After this reduction the American Company was to distribute to the holders of its outstanding stock the 1,900 shares of the Delaware Company stock acquired in exchange for the assets transferred to that company. The capital stock of the American Company was then to be transferred to the Delaware Company in exchange for 950 shares of the latter's capital stock.

As soon as the foregoing steps had been consummated the Delaware Company was to transfer to the Federal Company the 3,000 shares of the capital stock of the American Company and the so-called "fixed assets" above mentioned. In consideration for the transfer, the Federal Company was to pay $292,000 in cash and $317,900 in bonds for the assets and $282,100 in bonds for the 3,000 shares of stock. This was the agreed consideration to be paid by the Federal Company under the agreement between it and the stockholders of the American Company. The Delaware Company was then to distribute forthwith to its stockholders the cash and bonds and other considerations received by it in pursuance of the plan.

The "plan of reorganization" between the American Company and the Delaware Company was ratified and approved by the stockholders and directors of both companies and during the month of October, 1930, all the transfers contemplated were made. The Federal Company became the

owner of the "fixed assets" and all of the capital stock of the American Company. By reason of the ownership of this stock the Federal Company also became indirectly the owner of the "current assets." The Delaware Company received the $292,000 in cash and the $600,000 in bonds of the Federal Company. The bonds were dated October 10, 1930, bearing interest at the rate of 6% per annum, payable semi-annually to the bearer or registered owner. The bonds were payable serially as follows: $50,000 of the principal on October 10th of each of the years 1931, 1932, 1933, 1934, and 1935; and $350,000 on October 10, 1936. The Federal Company had the right to redeem or repay any or all of said bonds at various dates by payment of specified premiums thereon. The bonds were secured by a mortgage and deed of trust on all of the Federal Company's property given to the Foreman-State Trust and Savings Bank and Henry J. Carson, as trustees, who were given the right to enter and take possession of the mortgaged property in case of default in the payment of interest or principal or in the performance of other covenants of the mortgage.

On October 20, 1930 the Delaware Company distributed the bonds and cash to the stockholders. After the payment of certain expenses $265,970.29 in cash was divided among the stockholders. In the distribution Freund received $100,000, in bonds, and $40,378.35, in cash, totalling $140,378.35, and Mrs. Freund received $175,000 in bonds and $79,321.81 in cash, totalling $254,321.81.

The Delaware Company was formed for the purpose of receiving and liquidating the so-called "excepted assets" of the American Company which the Federal Company did not desire to acquire or which the stockholders of the American Company did not desire to transfer, and for the purpose of discharging the contingent and other liabilities assumed or retained by the stockholders of the American Company under the agreement of September 4, 1930 between those stockholders and the Federal Company. After the transactions hereinabove set forth the assets of the Delaware Company, which consisted solely of the so-called "excepted assets," were shown on its balance sheet to have a book value of $149,527.16. It had liabilities of $4,431.11, exclusive of its outstanding capital stock, which amounted to $2,850. The Delaware Company continued in existence and engaged in collecting, selling and otherwise disposing of or liquidating the so-called "excepted assets" acquired by it and in discharging certain of the liabilities of itself and of the former stockholders of the American Company. Its capital stock, all of which was distributed to the former stockholders of the American Company, including Freund and Mrs. Freund, had no fair market value at the time of its receipt.

In the agreement of September 4, 1930 between the stockholders of the American Company and the Federal Company, the stockholders, including Freund and Mrs. Freund, guaranteed and warranted that all accounts receivable, notes receivable, bills receivable and trade receivables of the American Company would be collected by October 31, 1931, and they agreed to repurchase any such receivables that were not fully collected by that time. They also covenanted to indemnify the Federal Company against all contingent liabilities of the American Company and against all liabilities not shown by an audit report made out by an accounting firm at that time.

Prior to the execution of the contract of September 4, 1930 the American Company had installed roofs with guarantees against defects in material and workmanship. Subsequent to the year 1930 the Federal Company made certain expenditures for repairs and replacements and made claim for reimbursement against the individual former stockholders of the American Company. In settlement of this claim, subsequent to the year 1930, three of the six stockholders of the American Company returned to the Federal Company $25,000 in par value of the bonds of the Federal Company acquired as hereinbefore set forth. Freund returned $4,625 of said bonds and Mrs. Freund returned $7,875 thereof.

In the income tax returns filed by Freund and Mrs. Freund for the calendar year 1930 Freund reported a capital gain of $40,378.35 in connection with the disposition of his American Company stock, and Mrs. Freund reported a capital gain of $79,321.81, these amounts being all the cash received by each of them as stockholders of the Delaware Company. The Commissioner determined that the capital gain of Freund was $86,291.55 and the capital gain of Mrs. Freund was $179,365.55. He added $45,913.20 to the capital gain reported by the former and $100,043.74 to the capital gain reported by the latter and determined

deficiencies in income tax for the year 1930 against each of them. Upon appeals by each to the Board of Tax Appeals the Board determined that there was no deficiency in either case. Its determinations were based upon its holding that under the provisions of Section 112 of the Revenue Act of 1928, 26 U.S.C.A. § 112 and note, no gain was to be recognized from the receipt of the bonds of the Federal Company by the taxpayers. The Commissioner thereupon filed the present petitions to review its decisions.

The question presented is whether, in addition to the gain realized from the cash received by the taxpayers in the transactions above described, they each also realized taxable gains from the receipt of the bonds of the Federal Company, or whether these bonds were "securities" received in a "reorganization" the gain from which is not to be recognized under the terms of paragraphs (b), (c), (g) and (i) of Section 112 of the Revenue Act of 1928, 45 Stat. 816, 26 U.S.C.A. § 112 and note, the pertinent provisions of which are as follows:

"§ 112. *Recognition of gain or loss* * * *

"(b) Exchanges solely in kind— * * *

"(3) Stock for stock on reorganization. No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization. * * *

"(c) Gain from exchanges not solely in kind—

"(1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received, without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property. * * *

"(g) Distribution of stock on reorganization. If there is distributed, in pursuance of a plan of reorganization, to a shareholder in a corporation a party to the organization, stock or securities in such corporation or in another corporation a party to the re-

organization, without the surrender by such shareholder of stock or securities in such a corporation, no gain to the distributee from the receipt of such stock or securities shall be recognized. * * *

"(i) Definition of reorganization. As used in this section and sections 113 and 115—

"(1) The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred * * *."

These reorganization provisions of the Revenue Act have been much before the courts in recent years and their meaning, insofar as it bears upon the question before us, is now well settled. Paragraph (i) (1), 26 U.S.C.A. § 112 note, defines the term "reorganization" as used in the statute. Clause (A) of that paragraph states that the term means, inter alia, "a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation)."

The terms "merger" and "consolidation" as used in the statute refer to corporate readjustments well known to the law. While the form of these readjustments varies according to the statutes of the different states the general purpose of them all has been to continue the interests of those owning enterprises, which have been merged or consolidated, in another corporation. Cortland Specialty Co. v. Commissioner, 2 Cir., 60 F.2d 937, 939. In the statutory definition, however, "the words within the parenthesis may not be disregarded. They expand the meaning of 'merger' or 'consolidation' so as to include some things which partake of the nature of a merger or consolidation but are beyond the ordinary and commonly accepted meaning of those words—so as to embrace circumstances difficult to delimit but which in strictness cannot be designated as either

merger or consolidation." Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U.S. 462, 469, 470, 53 S.Ct. 257, 260, 77 L.Ed. 428. "But the mere purchase for money of the assets of one company by another is beyond the evident purpose of the provision, and has no real semblance to a merger or consolidation." To come within the exemption of the statute one who transfers property to a corporation must acquire an interest in the affairs of the transferee corporation or continue to retain an interest in the properties transferred, Cortland Specialty Co. v. Commissioner, supra, page 940; Pinellas Ice Co. v. Commissioner, supra, page 470, 53 S.Ct. page 260, and this interest must be definite and material; it must represent a substantial part of the value of the thing transferred. Helvering v. Minnesota Tea Co., 296 U.S. 378, 385, 56 S.Ct. 269, 272, 80 L.Ed. 284.

■ As summarized by Mr. Justice Roberts in Groman v. Commissioner, 302 U.S. 82, at page 89, 58 S.Ct. 108, at page 112, 82 L.Ed. 63, the purpose of the reorganization sections is that:

"Where, pursuant to a plan, the interest of the stockholders of a corporation continues to be definitely represented in substantial measure in a new or different one, then to the extent, but only to the extent, of that continuity of interest, the exchange is to be treated as one not giving rise to present gain or loss. If cash or 'other property,' that is, property other than stock or securities of the reorganized corporations, is received, present gain or loss must be recognized."

■■ The required continuing interest of a stockholder who transfers his shares in a statutory reorganization may be retained in the form of bonds of the transferee corporation, however, since these are securities within the meaning of paragraph (b) (3), § 112, 26 U.S.C.A. § 112(b) (3). Helvering v. Watts, 296 U.S. 387, 56 S.Ct. 275, 80 L.Ed. 289; Lilienthal v. Commissioner, 9 Cir., 80 F.2d 411; Burnham v. Commissioner, 7 Cir., 86 F.2d 776; Commissioner v. Kitselman, 7 Cir., 89 F.2d 458. The purpose of the use of the phrase "stock or securities in such corporation or in another corporation a party to the reorganization" is to describe the form in which the continuing interest of the transferor in a reorganization may be represented under the terms of the statute. The fact that a large part of the consideration for the transfer may be represented by cash is immaterial, Helvering v. Minnesota Tea Co., supra, if the transfer involves a reorganization within the meaning of the statute and a substantial amount of stock or securities of the transferee corporation is received by the transferor. On the other hand, if the transfer is in fact a sale for cash, the payment of part of which is deferred, the fact that short term notes of the purchasing corporation are received by the transferors to evidence or secure the deferred installments of purchase price does not make the transaction a "reorganization" and the short term notes so received are not "securities" within the meaning of the act. Cortland Specialty Co. v. Commissioner, supra; Pinellas Ice Co. v. Commissioner, supra.

■ Returning to the case before us we have to determine whether the transactions which we have described constituted a reorganization within the meaning of the act. When these transactions are viewed as a unit, as the Commissioner concedes they must be (Bassick v. Commissioner, 2 Cir., 85 F.2d 8; Hazeltine Corp. v. Commissioner, 3 Cir., 89 F.2d 513), they appear on their face to constitute a reorganization within the terms of the parenthetical definition contained in Clause (A) of subd. 1 of paragraph (i) of Section 112, 45 Stat. 816, 26 U.S.C.A. § 112 note, since their net result was that the Federal Company acquired all the stock of the American Company, together with its fixed assets, and the interest of the stockholders of the latter company in its assets was continued in a substantial amount through the receipt in exchange for their stock of $600,000 in mortgage bonds of the Federal Company, in addition to $265,970.29 in cash. But did the transaction in fact even though not in form, involve a sale of the business assets and capital stock of the American Company to the Federal Company for cash the payment of a part of which was deferred and represented by short term purchase money obligations which did not give the stockholders of the American Company the requisite continuity of interest in the assets and business of that company? The answer to this question will decide the case. The Commissioner strongly urges that it must be answered in the affirmative upon the authority of Cortland Specialty Co. v. Commissioner, supra, and Pinellas Ice Co. v. Commissioner, supra. This calls for a consideration of the rulings in those cases.

In the Cortland Specialty Company case the transaction involved was in form a sale for a cash consideration, a portion of which was payable in deferred installments over a period of fourteen months. It was provided in the agreement of sale that the purchasing corporation should give the seller promissory notes to cover the deferred payments of purchase price. The Circuit Court of Appeals for the Second Circuit held that the transaction was a sale and not a reorganization and that the short term purchase money notes could not be considered as securities within the meaning of the act. Judge Augustus N. Hand said (page 940):

"Inasmuch as a transfer made entirely for cash would not be enough, it cannot be supposed that anything so near to cash as these notes payable in so short a time and doubtless readily marketable would meet the legislative requirements.

"The very reason that section 203(e) requires that some of the property received in exchange should be 'stock or securities' is to deprive a mere sale for cash of the benefits of an exemption and to require an amalgamation of the existing interests. There can be no justice or propriety in taxing one corporation who transfers its properties for cash and in relieving another that takes part of its pay in short time notes. The situation might be different had the 'securities,' though not in stock, created such obligations as to give creditors or others some assured participation in the properties of the transferee corporation. The word 'securities' was used so as not to defeat the exemption in cases where the interest of the transferor was carried over to the new corporation in some form."

In the Pinellas Ice & Cold Storage Company case the transaction was also in form a sale for a cash consideration, the payment of part of which was deferred over a period of three and one-half months. The deferred installments of the purchase price were to be evidenced by the purchaser's notes secured by mortgage bonds. The Supreme Court held in that case that the short term notes which the seller received under the agreement were not securities within the meaning of the act. Mr. Justice McReynolds said (pages 468, 469, 53 S.Ct. page 259):

"The 'vendor' agreed 'to sell,' and 'the purchaser' agreed 'to purchase,' certain described property for a definite sum of money. Part of this sum was paid in cash; for the balance the purchaser executed three promissory notes, secured by the deposit of mortgage bonds, payable, with interest, in about forty-five, seventy-five, and one hundred and five days, respectively. These notes—mere evidence of obligation to pay the purchase price—were not securities within the intendment of the act and were properly regarded as the equivalent of cash. It would require clear language to lead us to conclude that Congress intended to grant exemption to one who sells property and for the purchase price accepts well secured, short-term notes, (all payable within four months), when another who makes a like sale and receives cash certainly would be taxed. We can discover no good basis in reason for the contrary view and its acceptance would make evasion of taxation very easy. In substance the petitioner sold for the equivalent of cash; the gain must be recognized.

"The court below held that the facts disclosed failed to show a 'reorganization' within the statutory definition. And, in the circumstances, we approve that conclusion."

It will at once be observed that in both cases the transaction was in form and fact a sale for a money consideration part of which was payable in deferred installments over a short period of time. The notes received by the seller were evidences of the purchaser's obligation to pay the balance of the price and, being but short-term purchase money notes, were held to be the equivalent of cash and not securities which gave the holder an "assured participation in the properties of the transferee corporation" within the meaning of the act. In the present case on the other hand the transaction was not in form a sale for cash. It was carried through under an agreement and plan of reorganization under which the American Company's stockholders parted with their shares and all interest in its fixed and current assets and received in return $265,970.29 in cash and $600,000 in bonds of the Federal Company the majority of which ran for six years. These bonds were secured by a first mortgage and deed of trust on all of the Federal Company's property, including that acquired from the American Company, and the trustees under the mortgage were given the right to enter and take possession of the mortgaged property in case of default. We think it

clear that these bonds conferred upon their holders a definite and material interest in the affairs of the Federal Company.

In our opinion the transaction here involved was not a sale for cash, part deferred. If it was a sale at all it was at the most but a sale which was partly for cash and partly for mortgage bonds of the purchasing corporation. Since these bonds preserved for the sellers an interest in the assets sold, the transaction was a reorganization and the bonds were securities within the meaning of the Revenue Act. Helvering v. Watts, supra. The transaction was of the kind which paragraph (c) (1) of Section 112 of the Act, 26 U.S.C.A. § 112 (c) (1), was drawn to cover. This conclusion makes it unnecessary to consider the effect of the return of certain of the bonds after 1930 in settlement of certain outstanding liabilities of the American Company.

 Finally the Commissioner argues that the use of the Delaware Company in the transactions was a mere device to evade taxation which must be held to be ineffective, citing Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355. Of that case the Supreme Court said in Helvering v. Minnesota Tea Co., supra, page 385, 56 S.Ct. page 272:

"Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355, revealed a sham; a mere device intended to obscure the character of the transaction. We, of course, disregarded the mask and dealt with realities. The present record discloses no such situation; nothing suggests other than a bona fide business move."

The comment is equally applicable here. In the Gregory case a new corporation was formed for the sole purpose of transferring property from an existing corporation to its stockholders. By the use of this intermediate corporation it was sought to transform into a tax free distribution in reorganization what without its presence would have been an ordinary taxable dividend. It was the use of the corporate device, and that alone, which brought the transaction within the letter of the statute.

The present case, however, bears no resemblance to the Gregory case. In the first place the Delaware corporation was not used as a device to bring the case within the statutory definition. On the contrary that corporation was brought in, not only to serve as a vehicle for conveying title, but also to act as a liquidating agent for the excepted assets which the stockholders of the American Company desired to retain and to discharge the liabilities they agreed to assume. This was a perfectly proper business purpose. Furthermore the whole transaction was in pursuance of a plan of reorganization of corporate business. It was to carry out the program under which the Federal Company was to acquire the fixed assets and business of the American Company. But more persuasive than this is the fact that the use of the Delaware Company did not transform into a reorganization within the statutory definition what would not have been such a reorganization without it. On the contrary if the Delaware Corporation had not been used and if the conveyances had been made directly by the American Company and its stockholders to the Federal Company the transaction would still have been a reorganization, since it would still have appeared that the Federal Company would have acquired all of the capital stock and substantially all of the properties of the American Company and the stockholders of the latter would have retained a continuing interest in the Federal Company. We, therefore, conclude that there is no room in the present case for the application of the principle laid down in the Gregory case.

The decisions of the Board of Tax Appeals are affirmed.