## NEVILLE COKE & CHEMICAL CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8692.

Circuit Court of Appeals, Third Circuit.

Argued Jan. 18, 1945.

Decided March 22, 1945.

Thomas Watson, of Pittsburgh, Pa., for petitioner.

Muriel S. Paul, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and J. Louis Monarch, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before BIGGS, GOODRICH, and McALLISTER, Circuit Judges.

GOODRICH, Circuit Judge.

The question for us in this case is the correctness of the Tax Court's conclusion concerning the Neville Coke & Chemical Company's tax liability for 1936. Two corporations known as the Hillman Coal & Coke Company and W. J. Rainey, Inc., had made advances of money and sold coal on credit to a corporation known as the Davison Coke & Iron Company.[1] In 1932 the debtor corporation was in some financial difficulty and a reorganization was determined upon. The Hillman and Rainey companies subsequently caused the formation of the taxpayer corporation as a step to facilitate reorganization of the Davison company. To the new corporation Hillman and Rainey transferred their claims against or interest in, the debtor. These consisted of "preferred accounts", first mortgage bonds, accounts receivable, notes of the debtor due in three, four and five years without interest,[2] and stock, of various classifications, in the debtor company.

The 1932 efforts not having proved sufficient to get the debtor out of its troubles, in 1935 it filed a 77B petition; a plan of reorganization was promptly approved and final decree entered on January 31, 1936.

---

[1] In 1936 it amended its charter so as to change its corporate name to Pittsburgh Coke & Iron Company.

[2] The four and five year notes bore interest after three years.

Under the plan the debtor issued new common stock and debenture bonds. Its old bonds were exchanged for debentures and the holders of certain notes, the nature of which is discussed below, got new debentures in the same face amount ($1,129,000) plus 22,580 shares of common stock in the reorganized company.

Two questions of dispute in this Court between Commissioner and taxpayer relate to (1) whether the exchange of the notes for debentures and shares was a tax free transaction; (2) whether the new debentures were properly valued at par. The Tax Court sustained the Commissioner in his determination that the taxpayer had realized a taxable gain in exchanging its notes for the new debentures and shares. It also sustained the Commissioner's determination that the debentures, on date of acquisition, had a value of par, at the same time reducing the Commissioner's valuation on the shares from $5.94 to $5.00 each.

The first question is obviously the critical one; if the taxpayer is right on that, its troubles, so far as this litigation is concerned, are over. The relevant sections of the Revenue Act of 1936, are noted in the margin.[3] The storm center of the controversy here relates to § 112(b) (3). There is no gain or loss recognized if "stock or securities in a corporation * * * are * * * exchanged solely for stock or securities in such corporation * * *." Were the notes of Davison, which the taxpayer had in its possession, and which it exchanged for debentures and shares of stock issued by the reorganized debtor, "securities" within the wording of the stat-

ute? No question has been raised as to the sufficiency of the evidence of obligations issued by the reorganized debtor to qualify under the description of "stock or securities", and the problem is limited to the consideration of what the taxpayer turned in, that is, the notes above mentioned.

What then are "securities" within the meaning of the section? The taxpayer makes a tentative argument that the word ought to be taken in its common, accepted interpretation and that interpretation includes evidence of indebtedness, but he goes on to admit that the Supreme Court has read into the term a meaning differing radically from common interpretation.

■ It is to be noted that the phrase "stock or securities" appears twice in § 112 (b) (3). Once it refers to what a party turns into a corporation being reorganized. The second appearance of the phrase relates to what a recipient takes from the reorganized company as a result of the transaction. We have no reason for thinking that the phrase has a different meaning in either of the two instances and the argument by the taxpayer that it does differ fails to convince us. Cf. Lloyd-Smith v. Commissioner of Internal Revenue, 2 Cir., 1941, 116 F.2d 642, certiorari denied 1941, 313 U.S. 588, 61 S.Ct. 1111, 85 L.Ed. 1543.

Most of the decisions seem to have concerned themselves with what was issued to the recipient by the reorganized corporation. In Pinellas Ice & Cold Storage Co. v. Commissioner of Internal Revenue, 1933, 287 U.S. 462, 53 S.Ct. 257, 77 L.Ed.

---

[3] Revenue Act of 1936, c. 690, 49 Stat. 1648, 1678–1679, 1681, 26 U.S.C.A. Int. Rev.Acts, pp. 854–858.

"Sec. 111. Determination of Amount of, and Recognition of, Gain or Loss

* * * * * *

"(c) Recognition of Gain or Loss. In the case of a sale or exchange. the extent to which the gain or loss determined under this section shall be recognized for the purposes of this title, shall be determined under the provisions of section 112."

"Sec. 112. Recognition of Gain or Loss

"(a) General rule. Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111. shall be recognized, except as hereinafter provided in this section.

"(b) Exchanges solely in kind.

* * * * * *

"(3) Stock for stock on reorganization. No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

"(4) Same—Gain of corporation. No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

* * * * * *

"(g) Definition of reorganization. As used in this section and section 113—

"(1) The term 'reorganization' means * * * (D) a recapitalization, * * *."

428, the taxpayer was given short term secured notes, maturing in 45, 75 or 105 days, respectively. The Court said that to give an exemption "the seller must acquire an interest in the affairs of the purchasing company more definite than that incident to ownership of its short-term purchase-money notes." Id., 287 U.S. at page 470, 53 S.Ct. at page 260, 77 L.Ed. 428. Was the term "security" then to depend upon the length of time between inception and maturity of the obligation? The courts talked and decided as though length of time were the test. See the discussion and authorities cited in L. & E. Stirn, Inc. v. Commissioner of Internal Revenue, 2 Cir., 1939, 107 F.2d 390. Six year bonds were held to be securities by this Court in Commissioner of Internal Revenue v. Freund, 3 Cir., 1938, 98 F.2d 201. On the other hand, when the reorganized corporation issued evidence of indebtedness, ten year notes were held to be "securities" sufficient for a tax free transaction in Burnham v. Commissioner, 7 Cir., 1936, 86 F.2d 776, certiorari denied, 1937, 300 U.S. 683, 57 S.Ct. 753, 81 L.Ed. 886.

This tendency to measure legal sufficiency on a time basis was noted by the Supreme Court in LeTulle v. Scofield, Collector of Internal Revenue, 1940, 308 U.S. 415, 60 S.Ct. 313, 316, 84 L.Ed. 355. The Court there declared that "the term of the obligations is not material." It drew the distinction between a case where, after the reorganization, the transferee retained a proprietary interest in the enterprise or simply became a creditor.

■ Did the notes which taxpayer held against Davison Company give it a "proprietary" interest in the enterprise or was it only a creditor? Since LeTulle v. Scofield was decided the Second Circuit has held that short term notes (six months or on demand) which, however, were secured, "were but short term obligations having the character of temporary evidence of debt," as distinguished from "the well known permanent, or semi-permanent, status of long term obligations, which are to be treated as securities within the meaning of that term in § 112(b) (3) * * *." Commissioner of Internal Revenue v. Sisto Financial Corporation, 2 Cir., 139 F.2d 253, 255. The set of facts in that case differs from those here in the length of time in which the obligation had to run before maturity. But, it is to be remembered in this

connection, the time element is not the determining factor.

■ The Commissioner's argument is to the effect that the notes in question do not represent a stake in the business of the corporation. Their total amount was $1,129,000. $500,000 was due in three years, $250,000 in four years and $250,000 in five years. These had been received by the Hillman Company in 1932 in exchange for $500,000 demand notes and $500,000 past due promissory notes which Hillman Company had discounted for the debtor corporation. The remaining $129,000 represented three year notes received by Hillman Company and the Rainey Company in 1932 as current creditors of the debtor. It is pointed out that J. H. Hillman, Jr., of the Hillman Company, testified that the $1,000,000 loaned in 1930 was conditioned upon the debtor giving his Company its business in low volatile coal, thus indicating no intention of investing in debtor's business. The taxpayer, in its reply brief, meets this point with great vigor and considerable force. It calls to our attention the reorganization agreement of 1932 which was not a court proceeding, but an agreement between the Davison Company and its principal creditors. This document is in evidence and it is stipulated that the recital of fact therein contained may be taken as true. In that contract the debtor agreed that certain creditors of the corporation, including representatives of Rainey and Hillman should become members of the debtor's Board of Directors; stockholders of Davison surrendered prerogatives to receive cash dividends; the debtor limited its power to create new obligations. The arrangement in 1932 does indicate a stringent control on the part of the debtor corporation by its chief creditors. Most of those creditors received from the debtor promissory notes of the type held by Hillman and Rainey which were exchanged in the 1935 reorganization proceeding.

The weakness of the taxpayer's argument in this respect is that the taxpayer itself was not a party to this agreement. Provisions making certain creditors directors of the debtor company named specifically representatives of The Koppers Company, Hillman Coal & Coke Company, W. J. Rainey, Inc., and M. A. Hanna Company. The taxpayer, as the assignee of the notes given by the debtor to Hillman Company and others, did not succeed to this right of control of the debtor because it

became the possessor of the promissory notes. While it is true that the taxpayer was set up by two of these creditors for the convenience of reorganization it is, nevertheless, a separate legal entity and will have to take the disadvantages as well as the advantages of such corporate arrangement. Our conclusion is that the agreement of 1932, as a consequence of which the notes were issued, was an arrangement whereby creditors of Davison became very active in its management. But they did so by virtue of the agreement and not as holders of the notes, the issuance of which was one item in the agreement.

There is one further point in this connection. It was stipulated in the reorganization agreement that the notes should contain a provision giving the holder an option to convert up to 50% of the face amount thereof in prior preferred stock, if the option was exercised within three years. Petitioner contends that this is sufficient in itself to bring the notes into the category of securities and cites E. P. Raymond v. Commissioner of Internal Revenue, 1938. 37 B.T.A. 423. There the shareholder turned in his old shares and got back an option to buy new shares in the reorganized company. The taxpayer in the instant case was a creditor who had an option to become a shareholder if it had asked for stock instead of money. The fact that it had a chance to acquire a proprietary interest in its debtor does not change it from a creditor to a security holder, we think, unless and until the option is exercised.

■ The taxpayer also argues that its notes were "property", and that § 112(b) (4) covers his case. If that argument is correct this paragraph makes § 112(b) (3) unnecessary in every case where the creditor of a corporation in reorganization is itself a corporation. One can hardly conceive of any type of interest which is not describable as "property", and thus make the language applicable. All the learning which has gone into the concept of "security" in § 112(b) (3) becomes wasted effort so far as corporate creditors are concerned. Section 112(b) (4) is not applicable to this case. We note that the taxpayer, who has supported most of his points through a thorough and ably prepared reply brief, does not labor the contention of the applicability of § 112(b) (4) therein.

## Valuation.

■ The second main point made by the taxpayer is that the Tax Court was in error in valuing the Davison debentures at par value of $1,000 instead of $850, as of the date of the consummation of the reorganization plan. Taxpayer realizes its uphill task here, for the finding of value is finding of fact and such findings are, of course, peculiarly within the province of the Tax Court.

The debentures were not sold for cash during 1936 nor were they listed upon any stock exchange. There is evidence of a transaction by which Rainey exchanged $235,000 principal amount of the debentures and $400 in cash for $200,000 par value of its own bonds owned by companies known as Hecla Coal & Coke Co. and Puritan Gas Coal Co. As the Commissioner's argument points out, however, there is no showing in the record as to the value of the Rainey bonds. Even more important, the contract providing for the exchange was executed August 19, 1935, several months before the valuation date in question. We think this transaction, therefore, was not conclusive, nor even particularly enlightening to the Tax Court. Also, testimony of J. H. Hillman, Jr., of the Hillman Company, and of another valuation expert placed the value of the debentures at $790, $800 or $850. This is urged as testimony which the Tax Court was bound to accept.

■ The Tax Court had all the facts before it. It was not bound to accept the testimony of the experts even though not contradicted. Estate of Rae v. Commissioner of Internal Revenue, 3 Cir., 1945, 147 F.2d 204; Emerald Oil Co. v. Commissioner of Internal Revenue, 10 Cir., 1934, 72 F.2d 681, nor was it bound to accept Hillman's testimony even though the Commissioner had, himself, called Hillman as a witness on valuation. See 3 Wigmore on Evidence, 3rd Ed., § 909. The Tax Court, in discussing the value, pointed out that the reorganization placed the debtor in a much stronger financial position than before. The question of valuation was arguable when a determination had to be made on a limited amount of fact material. We see nothing which would justify us in substituting the taxpayer's contention for the Tax Court's conclusion.

The decision of the Tax Court is affirmed.