## WILSON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9231.

Circuit Court of Appeals, Seventh Circuit.
April 30, 1947.

KERNER, Circuit Judge, dissenting.

———◇———

John W. Lyons, Albert Stump, and Byron Emswiller, all of Indianapolis, Ind., for petitioner.

Sewall Key, Acting Asst. Atty. Gen., Robert N. Anderson, Harry Baum, and Frederic G. Rita, Sp. Assts. to Atty. Gen., and J. P. Wenchel and John M. Morawski, both of Washington, D. C., for respondent.

Before EVANS and KERNER, Circuit Judges, and BRIGGLE, District Judge.

EVANS, Circuit Judge.

The Tax Court determined that a partnership for income tax purposes did not exist between taxpayer and his wife, for the year 1941. A tax deficiency of $1,596.89 was thereupon entered against petitioner.

The facts are not seriously controverted. The inferences to be drawn from the un-disputed facts furnish the basis of the possible dispute. The facts, briefly stated, are:

David Wilson had been in a co-partnership with his brother, conducting a rendering business. This partnership failed.

Mary, the wife, was thrifty and industrious. She worked at a furniture factory five days a week and on Saturdays, in a butcher shop. She also took care of some cows, hogs and chickens, while her husband was working in the rendering plant with his brother, and she obtained some money therefrom. She and her husband also put in four acres of tomatoes. The proceeds brought $539 and she took half.

Upon the failure of the first partnership, David and his wife decided to start anew. They acquired a rendering plant at Noblesville, Indiana. They had between them $72 in cash, which was furnished by Mary. They had a truck on which some payments had been made, to which she contributed. There was $500 still owing on it. They purchased the rendering plant for $300. Both husband and wife signed a joint note therefor.

A rendering plant handles animals which die from accident or disease. The carcass cost little or nothing, the farmer being satisfied to have the dead animal removed from his farm.

During the period in question (1933-1941) David Wilson worked long and hard, riding in the country and collecting the animals and rendering them. His wife managed the office end of the business and answered the phone from morning until midnight, seven days a week, routing the trucks for efficient and economic collection of the dead animals, purchasing supplies as were needed for the business, contacting purchasers and selecting the most advantageous offers for their products, and keeping the accounts.

The phone work was a most important part of the business, there being twenty to forty calls a day and the phone bills ran over one hundred dollars per month.

The business soon began to prosper and five trucks were used in 1941. The net profits that year aggregated approximately fifteen thousand dollars. Petitioner admits a liability for income tax for one-half of

it. The Tax Court, however, upheld a tax assessment against him on all the profits of the business for said year.

In the Wilson family there were two children, one of whom was killed in 1939 in an automobile accident, and the proceeds of insurance and damages, aggregating $2,270, were placed in the bank account and used in the business. The receipt therefor was signed by both parents. As the profits of the business grew, property was purchased consisting of a farm and two houses, which were held jointly. They also purchased some bonds which were divided. Social Security Tax returns were filed in the name of David, as were the Indiana Gross Income Tax returns, the truck licenses, and the disposal plant vehicle certificates. Some checks in payment of the produce were made payable to the husband. The bank account was in David's name but Mary signed David's name to checks, which were always honored at the bank. She made deposits in the account.

The witnesses were David and Mary Wilson, a certified public accountant, the local bank president, and one of the purchasers of the company's products.

In disposing of the case, the Tax Court in its opinion observed

"Petitioner's wife testified that the agreement was that husband and wife should share the profits equally.

"We have no reason to question the truthfulness of the testimony of these witnesses."

The testimony which the Court accepted as true contained the following statement:

"When we were at Tipton we had already had some experience with what had to be done, and I had a brother there as a partner, and it was a complete failure. So when we came to Noblesville we said to ourselves there was two ends to this business, one end is to get the business, the other end is to process the business. I said from now on we would be partners in the business, the two of us. She would take one end of the business, I would take the other, and that is what we did for nine years."

The Tax Court gave its reason for its conclusion as follows:

"We think that the evidence shows that the Noblesville Rendering Co. as conducted during the year 1941 was more in the nature of a marital partnership. * * * We think that there was no contract of partnership between husband and wife which would have made the wife answerable for losses of the business out of her separate property. In these circumstances we think that the Noblesville Rendering Co. for 1941 was not conducted as a partnership within the purview of the income tax law and that the petitioner is taxable upon the entire profits, as determined by respondent."

Our decision in this case must turn on our construction of the Tower and Lusthaus cases (327 U.S. 280, 66 S.Ct. 532, 536, 90 L.Ed. 670, and 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679, respectively), construed in the light of the Dobson case (320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248).

■■■ The Tower and Lusthaus cases delineate the tests to be applied in determining whether the family partnership is a genuine partnership for Federal income tax purposes. These tests are merely to aid in the ultimate determination of the existence of an actual, bona fide partnership. As the Court said in the Tower case:

"* * * the question arises whether the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both. And their intention in this respect is a question of fact, to be determined from testimony disclosed by their 'agreement, considered as a whole, and by their conduct in execution of its provisions.'"

These tests are:

(1) "* * * the dominant purpose of all sections of the revenue laws * * * is 'the taxation of income to those who earn or otherwise create the right to receive it and enjoy the benefit of it when paid.'"

(2) "Was the income attributed to the wife as a partner income from a partnership for which she alone was liable in her 'individual capacity,' * * * or did the husband, despite the claimed partnership, actually create the right to receive and

enjoy the benefit of the income, so as to make it taxable to him * * *?"

(3) Did the wife perform business services? Was the wife's voice heard in the conduct of the business?

(4) Was the wife's share of the income used to purchase the things a husband usually buys for his wife and family?

(5) "A partnership is generally said to be created when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business and when there is community of interest in the profits and losses."

(6) A taxpayer may intentionally and validly take on a partner in order to decrease his income tax, but that partnership must be a bona fide one, not one where taxpayer continues in control as before. Proof of motive to reduce income taxes can lend strength to inference that there was no real partnership.

(7) "There can be no question that a wife and a husband may, under certain circumstances, become partners for tax, as for other, purposes. If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner * * *."

(8) "It is the command of the taxpayer over the income which is the concern of the tax laws."

(9) Was the wife permitted to draw checks on the business bank account?

As we review the evidence in this case in the light of the above tests, we find there is none that is not answered in taxpayer's favor. Mary contributed all the capital, the meagre sum of $72 to begin the business. The amount, it is true, was small, but it was all she had, and $72 more than the husband contributed. Both partners, Mary and David, and in about equal proportions, contributed the two principal assets of this partnership, namely, hopes and the will to make the hopes come true. The husband had not a dollar; he was broke. The truck which went into the business had been partly paid for from funds of both, and both were liable on the notes for the unpaid balance. Both were on the $300 note which was given for the purchase of the business. Both gave very substantial services throughout the life of the business.

The only time the wife spent away from the business was when she was performing household tasks or going to church.

In the beginning, the office was in the home, so that she was able to answer the phone and handle the office work the entire day, seven days a week. Outsiders—the bank president, and a purchaser of the firm's product, testified to her constant activities with the firm. The partnership association had been formed years before any claim of benefit under the Federal income tax laws was thought of. The burden of payment of Federal income taxes on the partnership profit was, when this partnership was formed, beyond the foresight of either party. It was the least of their worries. An outsider, a C.P.A. decided the facts established a partnership and justified the taxpayer's 1941 income tax return.

The subject presents a phase of tax law which has been productive of discussions in courts and law review articles,* perhaps more than justified by the simplicity of the question involved. This court has recently decided a case involving the same issue but presenting a vastly different factual situa-

---

* Some Results of the Supreme Court Decisions in the Family Partnership Cases. By Judge Shackelford Miller, Jr., USCCA 6, 19 Tenn.Law Review, 510-516, (Dec., 1946); Family Partnerships Under The Income Tax, 44 Mich.Law Review, 179-210 (October, 1945); Taxation of Income of Family Partnerships, 59 Harvard Law Review, 209-285, (December, 1945); 60 Harvard Law Review, 149-150, Note to Tower and Lusthaus Cases, November, 1946; 30 Minn.Law Review, 402-3, Note to Tower and Lusthaus cases; The Lusthaus & Tower Cases: Congressional Action Recommended, 20 Florida Law Jr., 261-2, (Oct. 1946); Family Partnership Taxation, 21 Tulane Law Review, 154-8 (October, 1946); 32 Virginia Law Review, 659-62. (April, 1946), Notes to Lusthaus & Tower Cases; 1 Tax Law Review, 450 (April-May, 1946), Husband-Wife Partnerships and Lusthaus and Tower cases; 41 Illinois Law Review, 669-675, (Jan., Feb., 1947), The Taxation of Family Partnerships; Mertens, Law of Federal Income Taxation, Secs. 18.04, 35.03.

tion (Samuel Appel v. Smith, 7 Cir., 161 F.2d 121).

It must be apparent that each case must turn upon the facts appearing in such case. Our problem here is simplified by the observation of the Tax Court, above-quoted. We base our decision largely upon it. "The wife testified that the agreement was that *they should share the profits equally. We have no reason to question the truthfulness of the statement.*" This comes the nearest to being a finding of fact which the Tax Court made in its document called, Memorandum Findings of Fact and Opinion.

We fully agree with this frank statement of the Tax Court judge who tried the case. Not a scintilla of evidence disputes or throws doubt on this finding. In its face we cannot hold that the Commissioner made out his case. The petitioner established the existence of a partnership; he was therefore liable for his share, or one-half of the profits of said partnership in the year 1941, and no more.

The Decision of the Tax Court is reversed.

KERNER, Circuit Judge (dissenting).

In this case the Commissioner determined that petitioner and his wife were not carrying on the business operated under the name of Noblesville Rendering Company as a partnership. Whether a real partnership existed was a question of fact, to be determined from the testimony disclosed by their agreement and by their conduct in execution of its provisions. Commissioner v. Tower, 327 U.S. 280, 287, 66 S.Ct. 532, 90 L.Ed. 670. The Tax Court, after considering all the testimony and the conduct of the parties, upheld the Commissioner's determination. It is true that the court's conclusion is directly contrary to the testimony of petitioner and his wife. But the court was not bound to reach its conclusion exclusively on the basis of their testimony when there were facts which gave rise to inferences contradicting their testimony. Cohen v. Commissioner, 2 Cir., 148 F.2d 336, and Neville Coke & Chemical Co. v. Commissioner, 3 Cir., 148 F.2d 599.

In addition to the facts mentioned in the majority opinion, the record discloses that in the conducting of the business only one bank account was maintained and that it was in the name of petitioner; that on many occasions petitioner represented himself as the owner of the business; that a form filed with the Treasury Department under the Federal Social Security Laws, 42 U.S.C.A. § 301 et seq., on October 11, 1937, stated that the "Business name of [the] establishment" was "Noblesville Rendering Co. David Wilson (owner)." The form was signed by "David Wilson" and his official position was stated to be "owner." Similar forms filed by petitioner for the quarters ending March 31, 1941, September 31, 1941, and December 31, 1941, were also signed by "David Wilson" and in them his title was stated to be "owner." The record also discloses that returns filed with the Indiana State authorities showed the business to be an individual business and not a partnership business; that no part of the profits of the business had ever been ascribed to petitioner's wife as "partner" or distributed to her, but that the profits were used for household expenses, the purchase of trucks and other equipment, and for the purchase of real estate which was taken in the joint names of petitioner and his wife; that neither petitioner nor his wife ever filed federal income tax returns prior to 1940 and that the return for 1940 accounting for all the business profits of Noblesville Rendering Company was filed by petitioner in his own name.

In this state of the record a case is presented where the evidence is conflicting. Under these circumstances it is the province of the Tax Court to harmonize the evidence insofar as that is possible, choose from among conflicting factual inferences and conclusions those which it considers most reasonable, and determine the question of fact in the light of the manifest conduct of the parties. In such a situation, upon appeal, our function is limited to determining whether there was substantial evidence to support the Tax Court's conclusion, and the only question is whether there was a rational basis for the inference drawn by the Tax Court. If there was, then a reviewing court is not at liberty to re-weigh the evidence or to choose between conflicting inferences. It may not substitute its

666

view of the facts for that of the Tax Court. Where the findings of the court are supported by substantial evidence, they are conclusive. Wilmington Co. v. Helvering, 316 U.S. 164, 62 S.Ct. 984, 86 L.Ed. 1352; Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248; Commissioner v. Scottish American Co., 323 U.S. 119, 65 S.Ct. 169, 89 L.Ed. 113.

In this case, it seems to me that my colleagues have returned to erroneous standards of review rejected by the Supreme Court in the above cases. In my opinion, there is in this record ample basis for the Tax Court's conclusion, hence I would affirm.