## COMMISSIONER OF INTERNAL REVENUE v. SISTO FINANCIAL CORPORATION.

### No. 52.

Circuit Court of Appeals, Second Circuit.

Dec. 14, 1943.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Samuel H. Levy, and Bernard Chertcoff, Sp. Assts. to Atty. Gen., for petitioner.

Willkie, Owen, Otis, Farr & Gallagher, of New York City (Robert C. Vincent, of New York City, of counsel) for respondent.

Before SWAN, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

This is a petition to review a decision of the Tax Court of the United States which expunged deficiencies in the income and excess profits taxes of the respondent, as determined by the commissioner for the taxable year 1936, on the ground that the respondent had not realized the gain on which the deficiencies were based. The respondent filed its returns for that period on the calendar and accrual basis.

The questions presented are (1) whether an owner of demand and of short term notes of a corporation, which transferred all of its assets to another corporation for the stock of the latter and then transferred part of such stock to the owner of the notes in satisfaction of the notes, realized gain to the amount of the difference between the cost of the notes and the market value of the stock received for them; and (2), if such gain was realized, whether it was within the non-recognition provisions of § 112(b) (3) or (5) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 855.

The taxpayer is a New York corporation with its principal office in the City of New York where it conducts a security investment business. On July 31, 1936, it held notes of the Barium Steel Corporation in the aggregate principal amount of $222,321.76 for its own account on which unpaid interest to the amount of $20,067.42 had accrued. These notes had been given for money it had loaned to the Barium Steel Corporation.* They were all payable on demand and were unsecured except $50,000 in face amount which were payable in six months or less and were secured by a second mortgage and by other collateral. The Barium Steel Corporation, which will be called Barium for convenience, was a business corporation organized under the laws of Ohio and was engaged in activities concerned with the manufacture of stainless and other high grade alloy steels. It had outstanding 1910 shares of class A Common stock, out of 6000 shares authorized, which were preferred in liquidation to the amount of $45 a share; and also had outstanding 14,000 shares of class B common stock out of 20,000 shares authorized. The respondent owned 625 of these class A shares and 8745 of the class B. On August 15, 1936, the Barium Stainless Steel Corporation, which will now be called Stainless, was organized under the laws of Delaware to, and it thereafter did, manufacture high grade alloy steel including that known as stainless. The respondent and both Barium and Stainless were dominated and controlled by J. A. Sisto.

On August 31, 1936, Barium, in exchange for 232,400 shares of the common voting

---

* It also then held a note of Barium for the account of J. A. Sisto which is not here involved.

stock of Stainless having a par value. of $1, transferred all of its assets to Stainless free and clear of liability on the notes held by the respondent but subject to a mortgage in the principal amount of $115,000 held by Canton Steel Products, Inc. which also owned 250 shares of Barium's outstanding class A shares.

Barium then disposed of the Stainless stock so acquired by transferring it in part to its creditors in satisfaction of its debts and by the distribution of the remainder to its shareholders. The respondent received 159,899 shares of this Stainless stock in payment of the principal and interest on the notes of Barium which it held for its own account as above stated. Respondent then sold 32,879 shares of its Stainless stock during the remainder of the year at varying prices. In its return of income for the year it treated this stock as received in a non-taxable exchange pursuant to a reorganization and reported gain and loss on the sales it made by using as its basis for each share the cost as it would have been computed had the shares been purchased for cash equal to the amount due on the Barium notes. The basis so arrived at was $1.516 a share.

The deficiencies determined by the commissioner were brought about by his refusal to treat the stock as though purchased by the respondent for cash amounting to the indebtedness of Barium on the notes and by his insistence that the notes were in fact overpaid to the extent that the fair market value of the Stainless stock received for the notes, which he determined to be $3 a share, exceeded the amount due on the notes.

■ Before dealing with any non-recognition provisions it is necessary to decide, of course, whether any gain was realized when the stock was received in satisfaction of the notes. If the notes are to be treated as cash there would be no realized gain tax-wise for that would come about under the present scheme of taxation of income only when made certain by a sale or other complete disposal of the stock. But that is only because Congress has seen fit to make the tax apply in that way when property is bought for cash and not because a gain, as of the time of the acquisition of property whose value can be determined, cannot be computed. When this taxpayer had notes which were not worthless it had "property" in which it might have "dealings" resulting in a tax-

able gain within § 22 of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 825. When those notes were used as the consideration for the acquisition of this Stainless stock there was a "disposition" of such property which became a taxable event under § 22(e) of the 1936 Act and that made the gain or loss computable for tax purposes under § 111, 26 U.S.C.A. Int. Rev.Acts, page 854. We have recently had occasion to point out why this is so in Elverson Corporation v. Helvering, 2 Cir., 122 F.2d 295. Whatever the form of this transaction, the respondent disposed of its right to enforce the payment of the notes in return for the stock it received and by so doing completely relinquished everything of value it had in, or represented by, the notes. This disposition being final, the tax consequences in so far as realized gain or loss alone are concerned depend only upon whether there was any in fact which in turn depends upon whether there was any difference between the respondent's basis for the property so finally disposed of and the fair market value of the property it received. Though the commissioner determined that fair market value to be $3 a share the tax court did not find it necessary, in view of its decision that the transaction did not produce realized gain, to determine the value of the shares and so, unless any gain or loss falls within the non-recognition provisions of the statute, there must be a remand for the determination of gain or loss.

■ The commissioner based his decision that the respondent did not acquire the Stainless stock in a tax-free exchange in reorganization within § 112(b) (3) of the 1936 Act when it received it in discharge of Barium's debt represented by the notes on the ground that the notes were not securities within the meaning of that statute. The tax court came to the same conclusion and we do also. The secured notes payable in six months or less were but short term obligations having the character of temporary evidence of debt, as it fluctuates in financing for current expenses, as distinguished from the well known permanent, or semi-permanent, status of long term obligations, which are to be treated as securities within the meaning of that term in § 112(b) (3) supra. Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U.S. 462, 53 S.Ct. 20, 77 L. Ed. 428; LeTulle v. Scofield, 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355; Cortland Spe-

*cialty Co. v. Commissioner,* 2 Cir., 60 F.2d 937. A fortiori, the demand notes were not securities. Though the respondent was a Barium stockholder as above shown we do not understand that *LeTulle v. Scofield, supra,* makes such notes as these in the hands of a stockholder securities within § 112(b) (3) when they would not be if held by someone else. *Lloyd-Smith v. Commissioner of Internal Revenue,* 2 Cir., 116 F.2d 642. Consequently any gain realized when the Stainless stock was transferred by Barium to the respondent did not fall within the non-recognition provisions of § 112(b) (3) and we understand that the respondent has now practically abandoned its contention that it did.

▆▆▆ Instead, it now insists that no gain which may have been · realized was taxable in 1936, because taxation is deferred by the non-recognition provisions of § 112(b) (5) which provides that: "No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange." In so doing it takes the ground that Barium was in fact insolvent although there is no finding to that effect and no proceedings in reorganization under the Bankruptcy Act, 11 U. S.C.A. § 1 et seq., were pending as they were in *Helvering v. Cement Investors, Inc.,* 316 U.S. 527, 62 S.Ct. 1125, 86 L.Ed. 1649, on which it strongly relies in seeking to apply this section of the statute. It is true that J. A. Sisto controlled all three of these corporations but that is not decisive on this point. Compare *Smith v. Higgins,* 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406. Here it was not even shown that they were wholly owned by the same interests. The record, moreover, not only fails to support the respondent's present argument that Barium was insolvent but strongly indicates that Barium was not for it does show that this corporation exchanged its assets for property sufficient to enable it to discharge all its debts and to make a distribution to some of its stockholders. In this situation it is impossible to treat the respondent as a transferor of Barium's as-

sets to Stainless on any theory that Barium's assets were but the property of its creditors. Could this hurdle be surmounted, § 112(b) (5) would still be inapplicable. If upon the theory of Barium's insolvency the respondent were a transferor, so was each of the other creditors and one condition upon the applicability of the statute is that when the exchange is by one or more persons the amount of the stock and securities received by each must be "substantially in proportion to his interest in the property prior to the exchange." *Blair v. Commissioner,* 2 Cir., 91 F.2d 992, 995. The interest of the creditors of an insolvent Barium would have equalled the value of all its assets and to make that proportion hold true after the exchange at least all of the Stainless stock should have gone to creditors. Knowing that it did not, we think it idle to pursue this subject further.

Reversed and remanded for further proceedings to determine the deficiencies in accordance with this opinion.