PETER RAICH AND WANDA J. RAICH, PETITIONERS, *v.* COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT

Docket No. 5651–64.   Filed August 12, 1966.

*Clarence J. Ferrari, Jr.*, for the petitioners.
*Harry M. Asch*, for the respondent.

#### OPINION

WITHEY, *Judge:* Respondent determined deficiencies in petitioners'
income tax for the calendar years 1961 and 1962 in the amounts of
$12,840.49 and $221.84, respectively. Petitioners have conceded some
of the issues raised by their petition, leaving the following issues to be
decided:

(1) Whether the transfer by petitioners in 1961 of the assets and
liabilities of their sole proprietorship to their controlled corporation
constituted a taxable exchange under sections 351 and 357(c) of the
Internal Revenue Code of 1954.

(2) Whether petitioners' receipt from the corporation of a promis-
sory note in the adjusted amount of $12,755.50, as partial payment for
the assets and liabilities transferred to it, resulted in gain to petitioners
in that amount.

All of the facts have been stipulated and are so found.

Petitioners Peter Raich and Wanda J. Raich are husband and wife
residing in San Jose, Calif. For the years in question, 1961 and 1962,
they filed joint Federal income tax returns with the district director
at San Francisco, Calif. Petitioners filed said returns on the cash
receipts and disbursements method of accounting.

Prior to January 3, 1961, petitioner Peter Raich conducted, as a sole
proprietorship, a sheetrock and drywall contracting business under
the name of Pete Raich Sheetrock Taping Service. For accounting
purposes, the business had as its taxable year the calendar year and
operated on a cash basis method of accounting.

On or about January 3, 1961, petitioners transferred to the Pete Raich Sheetrock Taping Service, Inc. (hereinafter the corporation), and the corporation accepted all of the assets and liabilities of the sole proprietorship business previously conducted by petitioners. The transfer of the business was intended to qualify as a nontaxable exchange under the provisions of section 351 of the Internal Revenue Code of 1954.[1]  In accordance with the transfer of the business of the sole proprietorship to the corporation, the corporation received the following assets and liabilities, listed on the books and records of the transferor in the following amounts:

*Assets*

| | | |
|---|---|---|
| Cash | | $1, 045. 40 |
| Trade accounts receivable | | [1] 77, 361. 66 |
| Receivables | | 1, 833. 97 |
| Prepaid rent | | 125. 00 |
| Equipment | $13, 626. 30 | |
| Less: Accumulated depreciation | 5, 378. 94 | 8, 247. 36 |
| Total | | 88, 613. 39 |

*Liabilities*

| | | |
|---|---|---|
| Trade accounts payable | | 37, 719. 78 |
| Notes payable | | [2] 8, 273. 03 |
| Total | | 45, 992. 81 |

[1] No amount of these receivables was reported as income on the returns of the transferor, but rather, was reported as income by the corporation in the fiscal periods in which they were collected. The petitioners personally guaranteed payment of all trade receivables transferred in the exchange.

[2] Of this amount, $3,273.03 constituted a specific encumbrance on equipment transferred to the corporation. The remaining $5,000 of this item represented the unpaid balance on a bank loan.

All the trade accounts payable were in existence as of January 3, 1961, the date of the transfer. None of these accounts were deducted for income tax purposes by the transferors but were deducted by the corporation, an accrual basis taxpayer, in its initial taxable period, the short fiscal year beginning January 1, 1961, and ending May 31, 1961. The capital stock received by the petitioners from the corporation consisted of 2,500 shares of $10 par value common stock which constituted all the issued stock of the corporation. The stock received by petitioners was listed on the books and records of the corporation at a total valuation of $25,000. As additional consideration, petitioners received a short-term unsecured promissory note in the face amount of $16,280.58. The note was payable on demand and carried interest at the rate of 6 percent per annum. Because of uncollectible accounts receivable in the amount of $3,525.08, whose collection had been guaranteed by petitioners, the face amount of the demand note

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.

was reduced by an equal amount, to $12,755.50. The balance of the note was reduced, by payment thereon, to $4,150.54 by the close of the corporation's fiscal period ended May 31, 1961. It was further reduced to $1,780.51 by the close of the corporation's fiscal year ended May 31, 1962, and was paid off in full by the close of the corporation's fiscal year ended May 31, 1964.

## Issue 1

The principal issue is whether the transfer of petitioners' sole proprietorship to their wholly owned corporation constituted a non-taxable exchange pursuant to section 351,[2] or constituted a taxable event under section 357(c).[3] Both parties agree that the transfer qualifies as a section 351 exchange. The parties disagree with respect to the applicability of section 357(c).

Section 351(a) provides that where property is transferred to a corporation solely in exchange for stock or securities of such corporation and immediately after the exchange the transferor is in control of the corporation, no gain or loss shall be recognized on the exchange. However, section 351(d)(1) provides that where another party to the exchange assumes a liability or acquires property subject to a liability, reference shall be made to section 357. Section 357(c)(1) provides that in a section 351 exchange—

if the sum of the amount of the liabilities assumed, plus the amount of the liabilities to which the property is subject, exceeds the total of the *adjusted basis* of the property transferred pursuant to such exchange, then such excess

[2] SEC. 351. TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.

(a) GENERAL RULE.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation. For purposes of this section, stock or securities issued for services shall not be considered as issued in return for property.

(b) RECEIPT OF PROPERTY.—If subsection (a) would apply to an exchange but for the fact that there is received, in addition to the stock or securities permitted to be received under subsection (a), other property or money then—

(1) gain (if any) to such recipient shall be recognized, but not in excess of—
(A) the amount of money received, plus
(B) the fair market value of such other property received; and
(2) no loss to such recipient shall be recognized.

\*    \*    \*    \*    \*    \*    \*

(d) CROSS REFERENCES.—
(1) For special rule where another party to the exchange assumes a liability, or acquires property subject to a liability, see section 357.

[3] SEC. 357. ASSUMPTION OF LIABILITY.

(c) LIABILITIES IN EXCESS OF BASIS.—
(1) In General.—In the case of an exchange—
(A) to which section 351 applies, or
(B) to which section 361 applies by reason of a plan of reorganization within the meaning of section 368(a)(1)(D),

if the sum of the amount of the liabilities assumed, plus the amount of the liabilities to which the property is subject, exceeds the total of the adjusted basis of the property transferred pursuant to such exchange, then such excess shall be considered as a gain from the sale or exchange of a capital asset or of property which is not a capital asset, as the case may be.

shall be considered as a gain from the sale or exchange of a capital asset or of property which is not a capital asset, as the case may be. [Emphasis supplied.]

Respondent contends that, under the facts in the instant case, a section 357(c) computation is required since the liabilities assumed by the corporate transferee, $45,992.81,[4] exceeds the "adjusted basis" of the property transferred to it, $11,251.73.[5] Under section 357(c), petitioners would thus incur a tax on the excess of liabilities assumed over property transferred in the amount of $34,741.08. In determining the adjusted basis of the property transferred to the corporation pursuant to section 357(c), respondent failed to include trade accounts receivable valued on the books of the transferor sole proprietorship at $77,361.66, on the ground that since the transferor's sole proprietorship was operated on a cash basis method of accounting, accounts receivable held by it had an "adjusted basis" of zero. Respondent thus takes the position that when the accounts receivable were transferred to the corporation, they retained their basis of zero in a section 357(c) computation.

Petitioners, on the other hand, contend that Congress intended section 357(c) to apply to a section 351 exchange only if the liabilities assumed by the corporate transferee exceed, not only the "adjusted basis of the property transferred," but also the book value of that property. Thus, since the liabilities assumed did not exceed the book value of the property transferred in this case, they contend section 357(c) should not apply. They contend in the alternative that assuming section 357(c) was intended to apply to the type of transaction presented by the instant case, the trade accounts receivable had a basis, for purposes of section 357(c), at least equal to the amount of the trade accounts payable assumed by the corporate transferee, $37,719.78.

These contentions thus require a determination as to whether a section 357(c) computation is required under the facts in question and if so, whether the accounts receivable of a cash basis transferor, when transferred to its wholly owned corporation under a section 351 exchange, are includable in the "adjusted basis of the property transferred" as these words are used in section 357(c).

Prior to the Revenue Act of 1921, property received on any exchange was treated, to the extent of its fair market value, as the equivalent of cash received for the purpose of determining gain or loss. This principle was applied to an exchange of property for the stock of the transferor's controlled corporation since the corporation was treated as an

[4] The liabilities transferred consisted of trade accounts payable in the amount of $37,719.78, and notes payable in the amount of $8,273.03.

[5] Respondent included the following assets in this total: cash, $1,045.40; accounts receivable, $1,833.97; prepaid rent, $125; and equipment, $8,247.36. Excluded from the total were trade accounts receivable, valued on the books of petitioners' sole proprietorship at $77,361.66.

entity separate from the transferor. Because such taxation seriously interfered with necessary business adjustments, Congress enacted section 202(c) (3) of the 1921 Act to permit business reorganizations without recognition of gain at the time of transfer. Section 202(c) (3) was reenacted as section 112(b) (5) of the 1928 Act which ultimately became section 351(a) of the 1954 Code. Thus, since 1921, Congress has provided for the nonrecognition of gain or loss resulting from the transfer of property to a controlled corporation solely in exchange for its stock or securities.

In section 351(d) (1), however, Congress provided that where, as the result of a section 351 transaction, a party other than the transferor assumes a liability or acquires property subject to a liability, reference shall be made to section 357. Subsection (a) of section 357 provides that where the transferor's liabilities are assumed by another party to the exchange, such assumption shall not prevent the transferor from benefiting from the nonrecognition provisions of section 351.[6] However, under subsection (c) of section 357, if the liability assumed by the corporate transferee exceeds the adjusted basis of the property transferred, the excess is taxable as gain to the transferor.

A literal interpretation of sections 351(d) (1) and 357(c) compels the application of section 357(c) to the transaction in question. If, as the respondent contends, the trade accounts receivable in the hands of petitioners' sole proprietorship had an adjusted basis of zero at the time of their transfer to the corporation, the liabilities assumed by the corporate transferee ($45,992.81) would exceed the adjusted basis of the transferor's property ($11,251.73) by the amount of $34,741.08, which amount, under section 357(c), must be recognized as gain to petitioners.

Petitioners contend, however, that section 357(c) should not be applied to the reorganization in question. They argue that Congress did not intend for that provision to apply to a situation, like that in the instant case, where the book value of the assets transferred exceeds the liabilities assumed and where the transferor receives no economic benefit or gain from such assumption. In support of their "gain" theory, petitioners rely on the case of N. F. Testor, 40 T.C. 273 (1963), aff'd. 327 F. 2d 788 (C.A. 7, 1964). We agree with petitioners that in the Testor case the transferor was economically benefited by the corporate assumption of his liabilities since the liabilities assumed by the corporate transferee exceeded not only the adjusted basis of the assets transferred but likewise exceeded their book value. We cannot agree, however, that because those facts existed in Testor, we are now re-

---

[6] Sec. 357(a)'s predecessor, sec. 112(k) of the 1939 Code, was enacted to nullify the result caused by United States v. Hendler, 303 U.S. 564 (1938). In Hendler, the Supreme Court construed sec. 112(b) (5) of the 1939 Code, the predecessor of sec. 351(a), to mean that if any amount of a taxpayer's liabilities were assumed and paid by the transferee corporation in what was otherwise a tax-free reorganization, then gain was to be recognized to the full extent of such assumption and payment.

quired to limit the application of section 357(c) only to those cases where such facts exist.

Petitioners further attempt to bolster their "gain" theory by pointing out that the examples cited by both the House and Senate Committee reports to illustrate the application of section 357(c) involved a situation where the transferor would have received a present financial windfall if no tax were imposed at the point of transfer. The example referred to by petitioners is as follows:

Thus, if an individual transfers, under section 351, property having a basis in his hands of $20,000, but subject to a mortgage of $50,000, to a corporation controlled by him, such individual would be subject to tax with respect to $30,000, the excess of the amount of liability over the adjusted basis of the property in the hands of the transferor. * * * [7]

While the foregoing example involves a situation where the transferor would reap economic gain if a tax were not imposed at the point of transfer, we do not understand that Congress, in using that example, intended to limit the application of section 357(c) only to identical fact situations. We must assume that if Congress had so intended to limit this section, it would have employed the necessary language. Finding nothing in the language of section 357(c) or in the legislative history of the 1954 Code to indicate any congressional intent to so limit the application of this provision, we must reject petitioners' argument and hold that a computation under section 357(c) is required by the facts in this case.

Section 357(c), which has no legislative counterpart under the 1939 Code, was first enacted in 1954 and provides that the gain to be recognized to the transferor from a section 351 exchange is the amount by which the liabilities assumed exceed the adjusted basis of the property transferred. If, as respondent contends, the trade accounts receivable are to be given a zero basis, then the amount of the trade receivables, $77,361.66, is not includable within the "adjusted basis of the property transferred" as that phrase is used in section 357(c). Such an interpretation of the statute would render petitioners liable for a tax on the gain resulting from the exchange in the amount determined by respondent, $34,741.08. To counter the effect of such a result, petitioners present the novel argument that in making a section 357(c) computation, the accounts receivable must be given an adjusted basis at least equal to the amount of the accounts payable assumed by the corporate transferee, or $37,719.78. If we were to accept this argument, the adjusted basis of the property transferred to the corpora-

[7] S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. 270 (1954); H. Rept. No. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d sess., p. A129 (1954). The pertinent Treasury regulation, sec. 1.357-2(a), Income Tax Regs., contains a similar example.

tion would be $48,971.51.[8]  Since this amount exceeds the total liabilities assumed by the corporate transferee, i.e., $45,992.81, no tax would be imposed under a section 357(c) computation.

Petitioners attempt to support this argument by the following syllogism: Under section 1012, the basis of property is its cost; the cost of the trade accounts receivable transferred equals the amount of the trade accounts payable ($37,719.78) ; therefore, the basis of the receivables is equal to the amount of the payables, or $37,719.78.  The weakness in this argument stems from the fact that petitioners have failed to show that the cost of the receivables equals the amount of the payables.  Their entire argument on this point appears in their brief, at page 22, as follows:

> An examination of the cost of the accounts receivable transferred to the corporation indicates that most of them were encumbered by liens which were in the amount of the accounts payable transferred.  Under the California Civil Code the mechanic's liens filed against petitioners would require that any payment of the accounts receivable transferred would be encumbered and would be immediately payable to the suppliers or other lien claimants.  The only benefit to the owner of the receivables would be the net profit after payment of the payables.  If petitioners are to be taxed in any amount, it should only be the net profit.

While petitioners above state that most of the receivables were encumbered by liens which were in the amount of the payables transferred, the record nowhere supports such a statement.  On the contrary, the parties have specifically stipulated that "All of such trade accounts payable were on open account and none of them specifically encumbered any of the transferred assets."  Neither are we satisfied, as petitioners' unsupported statement above assumes, that under the California mechanic's lien law the accounts receivable transferred represent the sole source from which mechanic's liens incurred in petitioners' sole proprietorship business would be satisfied.  We conclude that since the accounts receivable transferred did not have a basis equal to the amount of the accounts payable transferred, petitioners' theory must be rejected.

Accounts receivable in the hands of a cash basis taxpayer have a basis of zero.[9]  Similarly, when an individual or partnership reporting income on the cash receipts and disbursements method transfers accounts receivable to a corporation, the receivables have a zero basis to the corporate transferee.  *Helvering* v. *Cement Investors*, 316 U.S. 527 (1942) ; *Ezo Products Co.*, 37 T.C. 385 (1961) ; *P. A. Birren & Son* v. *Commissioner*, 116 F. 2d 718 (C.A. 7, 1940), affirming a Memoran-

---

[8] The adjusted basis of the property transferred, excluding trade accounts receivable, is $11,251.73 (fn. 7, *supra*).  If the trade accounts receivable are given a basis of $37,719.78, then the adjusted basis of all property transferred would be the total of these two figures, or $48,971.51.

[9] See *P. A. Birren & Son* v. *Commissioner*, 116 F. 2d 718, 720 (C.A. 7, 1940).

dum Opinion of this Court. This result is specifically required by section 362(a) which provides, in substance, that property acquired by a corporation in a section 351 exchange retains the same basis as it had in the hands of the transferor. Thus, the trade accounts receivable, both in the hands of petitioners' sole proprietorship and in the transferee corporation, had a basis of zero. The fact that the receivables had a book value of $77,361.66 at the time of the transfer is irrelevant to the disposition of this issue since the pertinent language of section 357(c) speaks only in terms of the "adjusted basis" of the property transferred. Inasmuch as this language is clear and unambiguous, we will not disturb its obvious meaning. We therefore hold that as a result of the section 351 exchange, petitioners incurred a gain under section 357(c) of $34,741.08. Whether this gain is to be taxed as ordinary income or as capital gain depends upon the nature of the individual assets transferred.[10]

As we stated in *Andrew W. Monaghan*, 40 T.C. 680, 687 (1963):

The sale of a going business operated as a proprietorship has long been considered as a sale of the separate business assets for purposes of ascertaining whether profit results in capital gain or ordinary income. *Williams* v. *McGowan*, 152 F. 2d 570 (C.A. 2); *Ernest A. Watson*, 15 T.C. 800, affd. 197 F. 2d 56, affd. 345 U.S. 544, rehearing denied 345 U.S. 1003; Rev. Rul. 55-79, 1955-1 C.B. 370, * * *

In the instant case, petitioners transferred the following assets to their wholly owned corporation: Cash, trade accounts receivable, receivables, prepaid rent, and equipment (less accumulated depreciation). Accounts receivable are specifically excluded from the definition of a capital asset by section 1221(4). The equipment, being a depreciable asset in the hands of the transferee corporation, is likewise denied capital asset treatment under section 1239. Since cash is generally disposed of at face value, and petitioners make no contention to the contrary, its transfer in the instant case resulted in neither gain nor loss. *Williams* v. *McGowan*, 152 F. 2d 570, 572 (C.A. 2, 1945). Similarly, prepaid rent is generally transferred at face value, resulting in no gain or loss. We therefore hold that the gain received by petitioners pursuant to section 357(c) is taxable as ordinary income.

In applying section 357(c) to the facts herein, we are not unmindful that the result reached may conflict with the well established intent of Congress to foster tax-free business reorganizations. However, in the absence of a clearly expressed congressional intent, we decline to adopt a construction of section 357(c) which is supported neither by its language nor its legislative history.

[10] Sec. 357(c)(1) specifically requires such a determination by providing that "such excess [of liabilities assumed over property transferred] shall be considered as a gain from the sale or exchange of a capital asset or of property which is not a capital asset, as the case may be."

## Issue 2

As the result of the transfer of petitioners' sole proprietorship to their wholly owned corporation, they received, in addition to the entire capital stock of the corporation, an unsecured promissory note. Whether this note is to be treated as debt or equity constitutes the basis of this issue. The problem arises from the different tax treatment accorded the promissory note depending upon its proper characterization. If, at the time of its issuance, the note constituted "equity" in the corporation, as petitioners contend, it can be characterized as a "security" of the corporation and thereby avoid tax consequences pursuant to the nonrecognition provisions of subsection (a) of section 351. That subsection provides in effect that no tax consequences attach to a section 351 transaction if the consideration received by the transferor from the corporation consists solely of "stock or securities of such corporation." On the other hand, subsection (b) of section 351 provides that if the transferor receives, in addition to corporate stock or securities, "other property or money," gain to the transferor is to be recognized to the amount of the fair market value of such "other property." Thus, if the promissory note constituted corporate debt, as respondent contends, it would fall within the meaning of "other property" under section 351(b), causing petitioners to incur a tax on its fair market value.

The note in question was a short-term unsecured promissory note in the original amount of $16,280.58, payable on demand and bearing interest at the rate of 6 percent per annum. The face amount of the note was reduced to $12,755.50 to reflect uncollectible trade accounts receivable in the amount of $3,525.08.[11] The note was paid off by the corporation as follows:

| Date | Balance of note |
| --- | --- |
| Jan. 3, 1961 | $12,755.50 |
| May 31, 1961 | 4,150.54 |
| May 31, 1962 | 1,780.51 |
| May 31, 1964 | 0 |

Whether the note in question is a "security" under section 351(a) or "other property" under section 351(b) depends upon the particular facts surrounding its issuance. In *Camp Wolters Enterprises, Inc.*, 22 T.C. 737 (1954), affd. 230 F. 2d 555 (C.A. 5, 1956), we were met with the same question under section 351's predecessor, sec. 112(b)(5), I.R.C. 1939. We there adopted, at page 751, the following guide for resolving this issue:

The test as to whether notes are securities is not a mechanical determination of the time period of the note. Though time is an important factor, the con-

---

[11] In transferring the trade accounts receivable of their sole proprietorship to the corporation, petitioners personally guaranteed payment of the receivables. When receivables in the amount of $3,525.08 became uncollectible, that amount was deducted from the face amount of the note.

trolling consideration is an over-all evaluation of the nature of the debt, degree of participation and continuing interest in the business, the extent of proprietary interest compared with the similarity of the note to a cash payment, the purpose of the advances, etc. It is not necessary for the debt obligation to be the equivalent of stock since section 112(b)(5) specifically includes both "stock" and "securities."

The fact that the note in question was payable on demand argues strongly against its constituting a corporate "security." *Pacific Public Service Co.*, 4 T.C. 742, 748 (1945), aff'd. 154 F. 2d 713 (C.A. 9, 1946); *Sisto Financial Corporation*, 47 B.T.A. 425, 429 (1942), aff'd. 139 F. 2d 253 (C.A. 2, 1943). The balance due on the note was substantially reduced within 17 months of its issuance and completely paid off in less than 3½ years from its issuance. Such rapid payment is inconsistent with the proposition that the note was intended to represent a proprietary interest in the corporation. On the above facts and case authority, we hold that when the corporation issued the note in question, petitioners received "other property" within the meaning of section 351(b), causing them to incur gain in the amount of the note's book value, $12,755.50, taxable as ordinary income.

*Decision will be entered for the respondent.*