John G. Parsons and Winifred Parsons v. Commissioner.
Parsons v. Commissioner
Docket No. 6647-70.
United States Tax Court
T.C. Memo 1972-72; 1972 Tax Ct. Memo LEXIS 185; 31 T.C.M. (CCH) 290; T.C.M. (RIA) 72072; March 23, 1972, Filed. John G. Parsons and Winifred Parsons, pro se, 3903 Milky Way, Waukesha, Wis.Matthew W. Stanley, Jr., for the respondent. FEATHERSTON
Memorandum Findings of Fact and Opinion FEATHERSTON, Judge: Respondent determined deficiencies in petitioners' Federal income tax in the amounts of $10,709.79 and $657.40 for 1965 and 1966, respectively. The issues presented for decision are as follows: (1) Whether, within the meaning of section 357(c), [1] petitioner John G. Parsons' adjusted basis in property which he transferred to a corporation, Parsons Agency, Inc., in exchange for its stock was exceeded by the liabilities assumed by the corporation, plus the liabilities to which the property was subject; and *188 (2) Whether petitioner John G. Parsons received constructive dividends from the corporation, Parsons Agency, Inc., during 1965 and 1966. Findings of Fact John G. Parsons (hereinafter referred to as petitioner) and his wife, Winifred Parsons, were legal residents of Waukesha, Wisconsin, at the time they filed their petition. They filed their joint Federal income tax returns for 1965 and 1966 with the 291 district director of internal revenue at Milwaukee, Wisconsin. In their return for 1965, petitioners reported the income from an insurance business, conducted as a sole proprietorship, under the accrual method of accounting. After petitioner was graduated from college in 1939, he commenced a career in the insurance business. Before purchasing his own insurance agency, he served as a superintendent of accounts for American Surety Company; as an inspector of buildings to establish fire insurance rates for the Fire Insurance Rating Bureau; and as a State agent for the North British Mercantile Insurance Company. Leaving the employ of the insurance companies, petitioner, in May of 1960, bought a small insurance agency for $2,500. He subsequently expanded this business by buying *189 several other small agencies at a cost of $15,000. In each case, he borrowed the money needed to make the purchase. During 1964, the net commissions from petitioner's insurance agency were $42,987.88. These commissions were derived from the sale of practically all lines of insurance, including fire, automobile, general casualty, life, and hospitalization insurance and surety bonds. On May 1, 1965, petitioner established a corporation, Parsons Agency, Inc. (sometimes hereinafter the corporation), to which he transferred his individually-owned insurance business in exchange for all the issued stock. His objective in incorporating the business was to facilitate the future transfer of an interest in the business to his young associate. Petitioner intended to exchange his sole proprietorship, including all the renewals, for the stock but to invest no cash in the corporation. In working out the details of the incorporation, he was assisted by two attorneys, a certified public accountant, and his bookkeeper. The following opening entries were made in the jouranl of the corporation: Debit
Credit
First National Bank of Waukesha
$ 1,380.51
Accounts Receivable
$37,551.80
Stock Subscriptions Re- ceivable
318.25
Office Furniture & Equip- ment
3,500.00
Automobiles
3,000.00
Goodwill
58,000.00
F.I.C.A. Payable
59.80
Federal W/H Payable
95.00
State W/H Payable
21.60
Notes Payable
29,396.13
Accounts Payable
936.15
Company Accounts Pay- able
45,480.86
Capital Stock
25,000.00
*190 The $58,000 figure for goodwill did not represent petitioner's cost or adjusted basis in the several insurance agencies which he acquired between 1960 and 1965; rather it was a figure selected to balance the opening entries. However, the fair market value of the insurance renewals transferred to the corporation on May 1, 1965, was not less than the $58,000. The item in the opening entries for notes payable in the amount of $29,396.13 was comprised of note No. 38669, payable to the Waukesha State Bank, in the amount of $2,255.38, and other notes, payable to the First National Bank of Waukesha, totaling $27,140.75. Note No. 38669 was given by petitioners to cover part of the purchase price of a Buick and was secured by a chattel mortgage on that automobile. Included in the notes to the First National Bank of Waukesha was one (No. 65516) given for the purchase of a Karmann Ghia, and this note was secured by a chattel mortgage on that automobile. The balance outstanding on this note at the time of the incorporation was $1,215. The corporation received the Buick and Karmann Ghia automobiles subject to the liabilities incurred for their purchases. The remainder of the notes payable *191 to the First National Bank of Waukesha, totaling $25,925.75, represented indebtedness, incurred in part for the acquisition of the various small insurance agencies, which had accumulated over the period of petitioner's operation of the agency. The corporation adopted no resolution indicating that it had assumed these notes, and it executed no agreement to assume them. On October 1, 1965, one of the customers of the insurance agency sold some of his property which had been covered by insurance and became entitled to a return of a portion of the commission which he had previously paid. The corporation did not have the funds with which to pay the refund. Petitioner, therefore, decided to borrow funds which he could advance to the corporation for that purpose. The loan was obtained in an amount sufficient to pay the return commission and to consolidate all of petitioner's other nonautomobile loans at the bank. To reflect this loan, petitioners signed a note (No. 7584) in their individual capacities, payable to the bank (First National Bank of Waukesha), in the amount of $25,000. This note was not executed by or on behalf of the corporation. It was guaranteed by Howard J. Kamps, subject *192 to the following: 292 It is understood this guarantee will be released when principal balance is paid down to $20,000.00. On January 16, 1967, the corporation was involuntarily adjudicated bankrupt. Proofs of claims filed with the bankruptcy court represented mainly claims by insurance companies for unremitted premiums collected from policyholders. Claims listed in the bankruptcy proceeding do not include note No. 7584, referred to above. At the time of the bankruptcy adjudication, the balance remaining unpaid on note No. 7584 was $12,000. Petitioner individually paid this balance, raising the funds required therefore from the surrender value of his insurance and by selling his home, an automobile, and certain stock which he owned. The list of debts owed by the corporation, filed in the bankruptcy court, does not include a claim by petitioner for reimbursement for this payment. Neither note No. 7584 nor the notes which it replaced were obligations of the corporation. In August 1965, petitioner purchased a pontoon boat and financed it with a loan (note No. 62-0042) from the Marine National Exchange Bank of Waukesha. In 1967, the pontoon boat was sold for $1,000, and petitioner *193 kept the proceeds. The corporation did not open a bank account under its corporate name until December 1, 1965. During the 8-month period prior to that date, it operated out of the checking account which had been used by the sole proprietorship. The following payments were made from the bank accounts used by the corporation during 1965 and 1966 on the various notes referred to above which were the obligations of petitioner: *13
1966
Note
No.
Principal
Interest
Principal
Interest
7584
[1] $6,600.00
[1] $450.11
[2] $11,000.00
[2] $907.46
62-0042 272.47
42.41
[3] 805.73
[3] 60.19
The corporation filed an income tax return reflecting taxable income of *194 $3,431.13 and an income tax of $728.02 for the taxable year ending April 30, 1966; the corporation thus had earnings and profits during its first fiscal year in the amount of $2,703.11. The corporation's income tax return for the taxable year ending April 30, 1967, reflects a loss in the amount of $17,281.52. During 1966, petitioners withdrew $5,248.79 from the corporation which was not reported as income in their joint return for that year. Respondent determined that petitioner "realized a taxable gain of $30,860.03 pursuant to the provisions of Section 357(c) of the Internal Revenue Code, by reason of a Section 351 exchange with * * * [his] wholly-owned corporation, Parsons Agency, Inc., whereby * * * [he] transferred to that corporation an excess of liabilities over assets in the amount of $33,318.25." However, respondent also determined that "in the event that bank notes executed by * * * aggregating $29,396.13, or such other amount as * * * ultimately [substantiates], are determined to have been retained by * * * rather than transferred to Parsons Agency, Inc., then it is alternatively held that any payments by Parsons Agency, Inc. on such bank *195 notes constitute taxable distributions to * * * in the years such payments * * * made." Respondent further determined that amounts totaling $5,248.79 deposited in petitioners' checking accounts during 1966 constitute taxable distributions from Parsons Agency, Inc. Opinion Respondent's primary contention is that petitioner realized taxable income when he transferred the assets of his sole proprietorship to Parsons Agency, Inc., and the corporation assumed some of his liabilities. Section 351[2] provides that where property is transferred to a corporation solely in exchange for stock or securities of such corporation and immediately after the exchange the transferor is in control of the corporation, no gain or loss shall be recognized on the exchange. However, where a party to the exchange assumes a liability or acquires property subject to a liability, reference shall be made to section 357. 293 Peter Raich, 46 T.C. 604 (1966). Section 357(c)(1)[3] provides that in a section 351 exchange - if the sum of the amount of the liabilities assumed, plus the amount of the liabilities to which the property is subject, exceeds the total of the adjusted basis of the *196 property transferred pursuant to such exchange, then such excess shall be considered as a gain from the sale or exchange of a capital asset or of property which is not a capital asset, as the case may be. *197 In determining that section 357(c) is applicable in the instant case, respondent has adjusted the corporation's opening journal entries, set forth in our Findings, to reflect his conclusions as to petitioner's adjusted basis in the transferred assets. These adjustments involve the elimination of the $58,000 item for goodwill and the $318.25 item for stock subscriptions. The resulting excess of liabilities ($77,370.05) over petitioner's adjusted basis in the assets transferred ($44,051.80) was determined to constitute taxable income to petitioner in the amount of $33,318.25. Petitioner challenges respondent's computations in two respects: (1) the goodwill item should not be eliminated; and (2) the corporation did not assume the notes in the amount of $29,396.13 which were treated as liabilities in the opening journal entries. Both of these challenges raise basically factual issues. We note parenthetically that the record on these issues is not as complete as it might be. The parties have stipulated that following the bankruptcy of the corporation and the demolition of the building in which it had offices, the corporation's books and records were lost or destroyed. From those records, *198 we have only a few excerpts copied by the revenue agent who examined petitioner's returns. The original examination of those returns did not raise the issues here presented, and the lapse of time has placed the parties at a decided disadvantage in attempting to reconstruct the facts. The stipulated facts do not, in every instance, appear to conform with certain documents which are in evidence. And petitioner, having lost his business and much of his other property following the bankruptcy of the corporation, was unable to enlist the assistance of an attorney in preparing his case. We have been required to piece together the facts, giving weight to petitioner's oral testimony on several crucial points. "Taking into account the fact that petitioner appeared on his own behalf, that he is not a lawyer, and that we were impressed with his candor and credibility," Max Carasso, 34 T.C. 1139, 1143 (1960), affd. 292 F. 2d 367 (C.A. 2, 1961), we find that he has shown errors in respondent's computations. Since section 357(c) deals with the adjusted basis rather than the fair market value of assets transferred to a corporation, respondent is, of course, correct *199 that the value of the goodwill generated by petitioner's own business activities does not control the question as to whether the assumed liabilities exceeded the adjusted basis of the transferred assets. In other words, the value of the goodwill of the agency as of May 1, 1965, is not the decisive criterion. However, petitioner showed that he purchased several small insurance 294 agencies and consolidated them into his business between 1960 and 1965. He explained that he made these purchases at prices which reflected the calculated value of the insurance renewals. The total amount of these purchases, we have found, was not less than $17,500. Petitioner showed that his net commissions during 1964, the last full calendar year in which he operated the insurance agency prior to the incorporation, amounted to $42,987.88. He further testified that, in his opinion, the value of the goodwill reflected by the net commissions of his sole proprietorship was approximately $85,000. From these facts we infer that the value of the purchased renewals had not been dissipated when the business was transferred to the corporation. In numerous cases, the courts have sustained respondent's contention *200 that the purchase price of insurance renewals or expirations or customer lists is a capital expense which is not subject to deductions for depreciation or amortization because the useful life thereof cannot be determined with reasonable accuracy. See, e.g., Marsh & McLennan, Inc. v. Commissioner, 420 F. 2d 667 (C.A. 3, 1969), affirming 51 T.C. 56 (1968); Boe v. Commissioner, 307 F. 2d 339 (C.A. 9, 1962), affirming 35 T.C. 720 (1961); Alfred H. Thoms, 50 T.C. 247 (1968); Hugh H. Hodges, 50 T.C. 428 (1968), acq. 1969-2 C.B. xxiv; Thrifticheck Service Corporation, 33 T.C. 1038 (1960), affd. 287 F. 2d 1 (C.A. 2, 1961). This capital expense for the renewals became a part of petitioner's basis for his business. In the light of all the evidence - particularly his testimony - we have found his adjusted basis in the renewals to be $17,500. [4]
As to the notes payable in the amount of $29,396.13, petitioner testified that he intended *201 to exchange the insurance renewals for the stock of the corporation and to retain the liability on the notes as his individual obligation. Respondent argues that an assumption of these notes must be implied from their inclusion as liabilities in the corporation's opening journal entries, from the payments made on the notes from the corporation's bank account, and from the fact that these liabilities originated with the sole proprietorship business which was transferred to the corporation. Clearly, the automobiles were transferred to the corporation subject to the outstanding chattel mortgages on them in the total amount of $3,470.38 within the meaning of section 357(c). Whether there was an assumption of the nonautomobile debts by the corporation must be determined under State law. Under the laws of Wisconsin, where this case arose, the mere fact that the corporation continues a sole proprietorship business, unchanged but for the form of ownership, is insufficient in itself to demonstrate an assumption by the corporation of the sole proprietorship's liabilities. Chicago, M., St. P. & P.R. Co. v Bluemound Oil Co., 275 Wis. 410, 82 N.W. 2d 205, 206 (1957). *202 While the corporation may expressly agree to assume the transferor's debts, Blumenthal v. Schneider, 186 Wis. 588, 203 N.W. 393, 394 (1925), its assumption thereof may also be implied or inferred from the circumstances in which the assets were transferred, Columbia Stamping & Mfg. Co. v. Reich, 28 Wis. 2d 297, 137 N.W. 2d 45, 48 (1965). While the factors referred to by respondent may under normal circumstances be sufficient to support an inference that the liabilities were assumed, there are other important factors in this case. On October 1, 1965, less than 5 months after the corporation was organized, when petitioner asked the First National Bank of Waukesha for an additional loan, the bank called upon him to consolidate the three outstanding nonautomobile notes plus the additional loan into a single new note. The new note was signed by petitioners in their individual capacities, rather than in the name of the corporation, and was guaranteed by another individual to the extent of $5,000. When the corporation entered bankruptcy in January 1967, $12,000 remained unpaid on the note, and petitioner paid this sum from his own funds - mainly from the surrender *203 value of his life insurance and the proceeds from the sale of his home, an automobile, and certain stock. The list of debts filed by petitioner in the bankruptcy court reflects neither the bank note nor a claim by petitioner for reimbursement of the $12,000 he paid to discharge the note. While the payments on the note from the corporation's bank account would ordinarily carry considerable weight, we think it significant that payments were made from the same source on note No. 62-0042 given for 295 a pontoon boat which did not belong to the corporation. Petitioner testified that he did not instruct the bookkeeper to include the bank debt in the opening journal entry as an obligation of the corporation, and the bookkeeper confirmed petitioner's testimony. We think the preponderance of the evidence supports the truthfulness of petitioner's testimony that this obligation of the sole proprietorship remained his personal obligation and was not assumed by the corporation. In summary, we hold that petitioner had an adjusted basis of $17,500 in the insurance renewals transferred to the corporation, and that only $3,470.38 of the $29,396.13 included as liabilities in the corporation's *204 opening journal entries constitutes liabilities of the corporation. Petitioner's adjusted basis in the transferred assets ($61,551.80) thus exceeded the obligations assumed and the obligations to which they were subject ($51,444.30) by $10,107.50. [5] We hold, therefore, that section 357(c) does not apply. *205 There remains for consideration respondent's alternative determination that petitioner received constructive distributions during 1965 and 1966 as a result of the payment of certain obligations and through the receipt of unreported deposits of income. In this connection, a distribution by a corporation to its shareholders is treated in the manner prescribed by section 301. [6] Under this section, to the extent that a shareholder's debt is paid or a withdrawal is made from current or accumulated earnings, it is taxable as ordinary income. Sec. 301(c)(1). To the extent a distribution exceeds earnings and profits, it does not constitute a dividend, but is applied against and reduces the shareholder's adjusted basis in his stock. Sec. 301(c)(2). Any further distribution is taxed to the shareholder as capital gains. Sec. 301(c)(3)(A). *206 During 1965 and 1966, the corporation made payments on notes Nos. 7584 and 62-0042 in the amounts set forth in our Findings. The total amounts of these payments constitute constructive distributions which must be treated in the manner prescribed by section 301(c). During its fiscal year ending April 30, 1966, the corporation had earnings and profits of $2,703.11, and this amount is taxable to petitioner as ordinary income. [7] Petitioner's adjusted basis in the corporation's stock was $10,107.50, and this amount of the payments is treated as recovery of his basis in the stock. The remainder of the payments, consistnen with the alternative determination by respondent, is taxable as long-term capital gain. [8]
The remaining item in controversy relates only to 1966. Employing the bank deposits method of reconstruction, *207 respondent determined that petitioners withdrew funds from the corporation during 1966 in the amount of $5,248.79. To show that this amount was not taxable income, petitioners had the burden of proof. Rule 32 of the Rules of Practice of this Court; Welch v. Helvering, 290 U.S. 111 (1933). The only substantial evidence 296 presented by petitioners on this issue was testimony that the deposits were included in the corporation's income. This testimony is not sufficient to show that the moneys were not taxable to petitioners. We have no alternative but to sustain respondent's determination that the $5,248.79 constitutes a distribution by the corporation which is taxable in the manner prescribed by section 301(c). To reflect the foregoing, Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.↩
1. Only principal of $2,000 and interest of $224.57 were paid on note No. 7584; the balances of these amounts were actually paid on the notes which were replaced by note No. 7584. ↩
2. Of these amounts, $4,000 and $394.16 of principal and interest, respectively, were paid during the corporation's taxable year ending April 30, 1966. ↩
3. Of these amounts, $283.42 and $31.46 of principal and interest, respectively, were paid during the corporation's taxable year ending April 30, 1966.↩
2. SEC. 351. TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR. (a) General Rule. - No gain or loss shall be recognized if property is transferred to a corporation (including, in the case of transfers made on or before June 30, 1967, an investment company) by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation. For purposes of this section, stock or securities issued for services shall not be considered as issued in return for property. (b) Receipt of Property. - If subsection (a) would apply to an exchange but for the fact that there is received, in addition to the stock or securities permitted to be received under subsection (a), other property or money, then - (1) gain (if any) to such recipient shall be recognized, but not in excess of - (A) the amount of money received, plus (B) the fair market value of such other property received; and (2) no loss to such recipient shall be recognized. * * * ↩
3. SEC. 357. ASSUMPTION OF LIABILITY. (a) General Rule. - Except as provided in subsections (b) and (c), if - (1) the taxpayer receives property which would be permitted to be received under section 351, 361, 371, or 374 without the recognition of gain if it were the sole consideration, and (2) as part of the consideration, another party to the exchange assumes a liability of the taxpayer, or acquires from the taxpayer property subject to a liability, then such assumption or acquisition shall not be treated as money or other property, and shall not prevent the exchange from being within the provisions of section 351, 361, 371, or 374, as the case may be. * * * (c) Liabilities in Excess of Basis. - (1) In general. - In the case of an exchange - (A) to which section 351 applies, or (B) to which section 361 applies by reason of a plan of reorganization within the meaning of section 368a(1)(D), if the sum of the amount of the liabilities assumed, plus the amount of the liabilities to which the property is subject, exceeds the total of the adjusted basis of the property transferred pursuant to such exchange, then such excess shall be considered as a gain from the sale or exchange of a capital asset or of property which is not a capital asset, as the case may be. * * *↩
4. There is no substantial evidence to support respondent's contention that petitioner currently deducted the cost of the purchased renewals.↩
5. The computation is as follows: Debit
Credit
Accounts Receivable
$37,551.80
Office Furniture & Equip- ment
3,500.00
Automobiles
3,000.00
Insurance Renewals
17,500.00
First National Bank
$ 1,380.51
F.I.C.A. Payable
58.90
Federal W/H Payable
95.00
State W/H Payable
21.60
Notes Payable
3,470.38
Accounts Payable
936.15
Company Accounts Pay- able
45,480.86
Total
$61,551.80
$51,444.30 For 1965, petitioner reported his insurance income on an accrual basis, and respondent does not question petitioner's basis for the accounts receivable. Cf. Peter Raich, 46 T.C. 604 (1966); Rev. Rul. 69-442, 1969-2 C.B. 53. Petitioner testified that the transferred automobiles had value in excess of $3,000 at the time of the incorporation, but he did not establish the amount of their adjusted basis within the meaning of sec. 357(c)↩.
6. SEC. 301. DISTRIBUTIONS OF PROPERTY. (a) In General. - * * * a distribution of property * * * made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c). * * * (c) Amount Taxable. - In the case of a distribution to which subsection (a) applies - (1) Amount constituting dividend. - That portion of the distribution which is a dividend * * * shall be included in gross income. (2) Amount applied against basis. - That portion of the distribution which is not a dividend shall be applied against and reduce the adjusted basis of the stock. (3) Amount in excess of basis. - (A) In general. - * * * that portion of the distribution which is not a dividend, to the extent that it exceeds the adjusted basis of the stock, shall be treated as gain from the sale or exchange of property. * * *↩
7. These earnings and profits are, of course, to be apportioned ratably among all the distributions made during the corporation's taxable year ending April 30, 1966, in accordance with sec. 1.316-2(b), Income Tax Regs.↩
8. Petitioner is, of course, entitled to a deduction under sec. 163 for the portions of these payments which constitute interest.↩