**Wilford E. THATCHER et al.,
Appellants,**

v.

**COMMISSIONER OF INTERNAL
REVENUE, Appellee.**

No. 74–2245.

United States Court of Appeals,
Ninth Circuit.

March 17, 1976.

---

Leo S. Meysing (argued), Meysing & Braun, Portland, Or., for appellants.

William S. Estabrook, III, Atty., U.S. Dept. of Justice (argued), Washington, D.C., for appellee.

Before KILKENNY and GOODWIN, Circuit Judges, and EAST,* District Judge.

ALFRED T. GOODWIN, Circuit Judge:

Two individual taxpayers and a corporation seek reversal of a Tax Court decision [1] holding taxable as a gain under 26 U.S.C. § 357(c) (1970) [2] the excess of partnership

---

* The Honorable William G. East, United States District Judge for the District of Oregon, sitting by designation.

1. 61 T.C. 28 (1973).

2. This section applies to transfers of property to a corporation by a controlling shareholder who receives stock or securities and the assumption of liabilities in exchange. While the receipt of stock or securities only can be ac-complished tax-free under 26 U.S.C. § 351 (1970) (see note 3 *infra*), § 357(c) provides:

"* * * if the sum of the amount of the liabilities assumed, plus the amount of the liabilities to which the property is subject, exceeds the total of the adjusted basis of the property transferred pursuant to such exchange, then such excess shall be considered as a gain from the sale or exchange of a capital asset or of property which is not a capital asset, as the case may be."

liabilities assumed by the corporation over the partners' basis in the assets they transferred to the corporation in a § 351 exchange.[3]

From 1956 to 1963, Wilford Thatcher and Karl Teeples engaged in business as partners. The enterprise acquired diversified assets and liabilities. The partners filed tax returns under the cash receipts and disbursements method of accounting. In 1963, the partners formed Teeples and Thatcher, Inc., and transferred to that corporation all the partnership's assets in exchange for all the authorized shares of the corporation.

The assets transferred consisted of $317,146.96 in unrealized receivables (partially completed construction contracts) and other properties valued at $325,892.33. The corporation concurrently assumed $164,065.54 in accounts payable and $264,194.25 in other obligations. During 1963, the corporation collected the accounts receivable and paid the accounts payable. The corporation reported as income its receipts on accounts receivable and deducted as expenses the payments made upon the accounts payable.

Because the liabilities assumed (including accounts payable) exceeded by some $102,367.73 the partnership's adjusted basis in the assets transferred to the corporation,[4] the Commissioner took the position that the excess was taxable under § 357(c) as a gain to the partners in the year that their partnership debts were assumed.

Also because the liabilities assumed by the corporation substantially exceeded the partners' basis in the assets transferred to the corporation, the Commissioner took the position that the shares of stock received by the taxpayers in the exchange had a basis of zero under 26 U.S.C. § 358 (1970). The zero basis in the stock caused the individual taxpayers to incur further taxes when they sold some of their shares back to the corporation in 1963 and 1964.

Teeples undertook an overseas mission for his church in 1963 and became for most purposes inactive in the business. The corporation paid him, however, $1,250 per month. The Tax Court held that only $250.00 of each payment was deductible as salary paid by the corporation under 26 U.S.C. § 162(a) (1970).

■ The Tax Court was not clearly erroneous in its treatment of the salary question. There was substantial evidence to support denial of a deduction to the extent of $1,000. *See Klamath Medical Service Bureau v. Commissioner*, 261 F.2d 842 (9th Cir. 1958). The other questions are not so easily answered.

The definition of § 357(c) liabilities and their tax treatment have divided the Tax Court and created a conflict between the Tax Court and the Court of Appeals for the Second Circuit. With five judges dissenting, the Tax Court in this case followed its earlier decision in *Raich v. Commissioner*, 46 T.C. 604 (1966). There, as here, a cash-basis taxpayer accomplished a § 351 incorporation and was taxed under § 357(c) when his liabilities (including accounts payable), assumed by the corporation, exceeded his basis in the assets transferred to his corporation.

---

3. The relevant portions of § 351 declare:

  "(a) No gain or loss shall be recognized if property is transferred to a corporation . . by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation. For the purposes of this section, stock or securities issued for services shall not be considered as issued in return for property.
  " * * * *.
  "(e)(1) For special rule where another party to the exchange assumes a liability, or acquires property subject to a liability, see section 357."

4. Liabilities assumed:

| | | |
|---|---|---|
| Accounts payable | $164,065.54 | |
| Other | 264,194.52 | |
| | | $428,260.06 |
| Basis: | | |
| Accounts receivable | —0— | |
| Other | $325,892.33 | |
| | | $325,892.33 |
| | | $102,367.73 |

After *Raich* was decided, the question returned in *Bongiovanni v. Commissioner*, 470 F.2d 921 (2d Cir. 1972). Bongiovanni, a cash basis taxpayer, completed a § 351 incorporation and the new corporation assumed his liabilities in an amount which, under the *Raich* rationale, would have exceeded the taxpayer's basis in the assets transferred to the corporation. The Second Circuit, in a widely noted opinion,[5] defined liabilities in such a manner as to exclude accounts payable from the reach of § 357(c) and thus avoid the tax consequences which would have resulted had the *Raich* case been followed.[6]

While we commend the *Bongiovanni* result, we cannot accept the method followed in reaching that result. There the court defined liabilities in an *ad hoc* manner that may have worked equity in that case, but the definition is likely to produce unforeseen results in other cases. In its ordinary meaning, the term "liability" means "that which one is under an obligation to pay; * * * debt * * * [as] opposed to assets." Webster's New International Dictionary (2d ed. 1941). An account payable fits comfortably within that definition.

We believe that the integrity of the standard meaning of liability [7] can be retained while giving vitality to the purposes of both § 351 (tax-free exchange) and § 357 (closing the escape of taxes by borrowing against assets before transferring them to the new

corporation, and blocking the creation of a "negative" basis.)

Judge Hall, dissenting in the present case when it was before the Tax Court, did not undertake to redefine "liability", but advanced a theory that would permit a constructive "wash" narrowly limited to this kind of case. 61 T.C. at 42–44. While the wash, or setoff, solution is not without its own doctrinal difficulty,[8] it is consistent with the spirit of § 351, as it prevents wholly unwarranted tax windfalls in favor of the government. It is equally consistent with § 357(c) so long as its employment is limited as Judge Hall suggests.

Under Judge Hall's proposal, accounts payable are considered liabilities and § 357(c) gain is recognized when the sum of the liabilities assumed exceeds the basis of the assets transferred. Under the statute, assumption of debt supplants the usual requirement of actual payment for recognition of gain by cash-basis taxpayers. If no trade receivables are surrendered, recognition of the § 357(c) gain completes the income analysis of the incorporation exchange.

However, if receivables are transferred, Judge Hall believes the cash-basis transferor has in effect sold those accounts to the transferee-corporation. The consideration to be received is extinguishment of the transferor's payables. When the transferee-corporation provides that considera-

---

**5.** Among the articles which have considered the issues raised in *Bongiovanni* are: F. Burke & S. Chisolm, *Section 357: A Hidden Trap in Tax-Free Incorporations*, 25 Tax.L.Rev. 211 (1970); L. Del Cotto, *Section 357(c): Some Observations of Tax Effects to the Cash Basis Transferor*, 24 Buffalo L.Rev. 1 (1974); M. Phelan, *Conflicting Definitions of "Liabilities" Threatens Some Tax Free Reorganizations,* 40 J. Taxation 356 (1974); T. Roha, *Application of Section 357(c) of the Internal Revenue Code to a Section 351 Transfer of Accounts Receivable and Payable,* 24 Catholic U.L.Rev. 243 (1975); and R. Wellen, *New Solutions to the Section 357(c) Problem*, 52 Taxes 361 (1974).

**6.** The court limited the scope of the term "liabilities" to include only "liens in excess of tax costs." 470 F.2d at 923–24. The *Bongiovanni* definition appears to mean the excess of secured debts over the transferor's adjusted basis

in the assets transferred. The Seventh Circuit earlier rejected such a narrow scope for "liabilities" in *Testor v. Commissioner*, 327 F.2d 788 (7th Cir. 1964).

**7.** See D. Kahn & D. Oesterle, *A Definition of "Liabilities" in Internal Revenue Code Sections 357 and 358(d),* 73 Mich.L.Rev. 461, 479 (1975).

**8.** Under the setoff theory, transfer of the accounts receivable is viewed as a sale. The consideration received by the transferor is payment by the corporation of off-setting trade payables. The wash treatment recognizes this completed sale by giving the cash-basis transferor a setoff to the extent that liquidation of the payables by the transferee represents its purchase of the receivables. This formula encroaches upon the strict construction of cash-basis accounting.

tion, the cash-basis transferor should be able to recognize the now-completed sale of receivables. He can do so through a setoff to the § 357(c) gain. Since there is no statutory recognition rule for this sale, the cash-basis transferor can invoke the setoff only upon actual payment of the allocable and deductible trade payables by the transferee-corporation. If the sum of the receivables transferred equals or exceeds in amount the § 357(c) gain, and the "purchase" of those receivables is completed in the year of the transfer, the setoff will completely wash out the § 357(c) gain.[9]

Such a setoff is realistic. It prevents treatment as gain of something that was not in fact a gain, but only appeared to enhance the partners' balance-sheet position because of the cash-basis accounting method. The setoff thus avoids the Draconian effects of the *Raich* formula in this case without opening for exploitation the kind of "borrowing-out" and other manipulations of credit and depreciation which, prior to enactment of § 357 and its predecessor (§ 112(k) of the 1939 code),[10] may have permitted massive escapes from taxation in § 351 transfers.

We hold, therefore, that the taxpayers were entitled to set off the deductible and paid trade accounts which are allocable to the purchase of the receivables. On the facts of this case the § 357(c) gain is met by the setoff.

The remaining question is whether, having applied a setoff to avoid a § 357(c) gain, we can affirm the Tax Court's decision that the shares received by the taxpayers in the § 351 exchange had a zero basis. We have concluded that the Tax Court was correct in determining the basis of the shares to be zero.

The determination of the partners' basis in the stock acquired is unaffected by the setoff allowed for § 357(c) purposes. Under Judge Hall's formulation, a gain of $102,367.73 is recognized under § 357(c), but the setoff provides a means of eliminating unwarranted tax liability. Harmonizing the § 357(c) gain with the formula provided in § 358(a) and (d) for basis determination, we affirm the Tax Court in according taxpayers a basis of zero in their stock when calculating the tax consequences of their stock redemption.

In summary, we affirm that part of the Tax Court judgment which disallows the corporation's deduction of part of the salary paid Teeples, and that portion which treated the redemption of zero-basis stock as taxable income in the years in question. We reverse that part of the judgment which taxed as gain to the individual partners their respective shares of $102,367.73 by which the accounts payable exceeded the basis in the assets transferred to the corporation.

Affirmed in part; reversed in part.

9. In formulating this offset, Judge Hall said: "* * * Nothing in sections 351 or 357 requires treatment of only *one* side of the receivable-payable 'sale' as a recognizing transaction. The statutory purpose is far better served if payables paid by the transferee in the taxable year of transfer are treated as deductible to the transferor to the extent the off-setting receivables are treated as received by him. Since payment of a deductible liability by a cash-method taxpayer gives rise to a deduction, the same deduction should be allowed on payment when section 357(c) treats the liability as assumed in exchange for receivables." (Emphasis in original.) 61 T.C. at 42–43.

10. Added by Act June 29, 1939, ch. 247 § 213(a), 53 Stat. 870. The circumstances which prompted this congressional response were contemporaneously reported in S. Surrey, *Assumption of Indebtedness in Tax-Free Exchanges*, 50 Yale L.J. 1 (1940).