T.C. Memo. 1997-507

UNITED STATES TAX COURT

SAM E. SCOTT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21525-94.                    Filed November 12, 1997.

Sam E. Scott, pro se.

<u>Marshall R. Jones</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, <u>Judge</u>:  Respondent determined a $73,055 deficiency in
petitioner's 1991 Federal income tax, a $12,313 addition to tax for
failure to timely file a 1991 Federal income tax return pursuant to
section 6651(a)(1), and a $14,611 accuracy-related penalty for

substantial understatement of tax pursuant to section 6662. The deficiency primarily relates to Sam E. Scott's (petitioner) withdrawal from his law firm partnership.

After concessions, the following issues remain for decision: (1) Whether petitioner was entitled to a $121,500 loss deduction due to his withdrawal from his law firm partnership; (2) whether petitioner received an $85,455 taxable distribution from his law firm's 401(k) plan; (3) whether petitioner is entitled to a $33,943 interest expense deduction; (4) whether petitioner is liable for an addition to tax for failure to timely file his 1991 Federal income tax return pursuant to section 6651(a)(1); and (5) whether petitioner is liable for an accuracy-related penalty for the substantial understatement of tax pursuant to section 6662.

All section references are to the Internal Revenue Code as in effect for the year in issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Petitioner resided in Hazlehurst, Mississippi, at the time he filed his petition.

Heidelberg & Woodliff Law Partnership

In 1963, petitioner joined the law firm of Heidelberg, Woodliff & Franks (which later became Heidelberg & Woodliff), a general partnership in Jackson, Mississippi, as an associate attorney. Petitioner's practice primarily was confined to general civil litigation.

In 1968, petitioner became a partner in Heidelberg, Woodliff & Franks (hereinafter referred to as the firm, law firm, or the partnership). Upon becoming a partner, petitioner purchased his interest in the law firm by making monthly payments to the three named partners. During his tenure there, petitioner was active in the firm's management, serving as managing partner for a time.

In 1983, Messrs. Woodliff and Franks sold their interests (totaling 46 percent) in the partnership for approximately $500,000 to seven junior partners. (Junior partners received a percentage of the law firm profits to the extent they exceeded a certain amount, plus a salary, but did not own an interest in the partnership.) Four of the junior partners who bought Messrs. Woodliff's and Franks' interests left the firm in 1985 and refused to pay the balance due. Thereafter, the remaining partners at the firm (including petitioner) assumed the obligation owed to Messrs. Woodliff and Franks.

Sometime during the late 1980's, the firm adopted a new partnership agreement that granted partners only income interests in the firm rather than specific interests in the firm's assets. Partners under the old partnership agreement were bought out by the partnership. Thus, under the new partnership agreement, partners did not make capital contributions when they entered the partnership, and received no liquidating distributions when they left. The income interests were based on an annual evaluation of each partner through a point system used by the firm's compensation committee. In 1990, petitioner had an 8.86-percent interest in the partnership.

On January 2, 1991, petitioner gave notice of his termination from the firm, effective retroactively to December 31, 1990. Petitioner then left Heidelberg & Woodliff, and together with several other individuals who had earlier left the firm, started a new law firm. At the time petitioner left Heidelberg & Woodliff, he was the firm's largest producer.

Petitioner's 1990 Schedule K-1 on Form 1065 (Partner's Share of Income, Credits, Deductions, Etc.) from Heidelberg & Woodliff reported petitioner's capital account adjustments as follows:

| | | |
|---|---|---|
| (a) | Capital account at beginning of year | $(21,369) |
| (b) | Capital contributed during year | --- |

(c) Income (loss) from      223,264
     * * * below
(d) Income not included      647
     in column (c) plus
     nontaxable income
(e) Losses not included      (19,672)
     in column (c), plus
     unallowable deductions
(f) Withdrawals and      (182,870)
     distributions
(g) Capital account at end of      ---
     year (combine columns
     (a) through (f))

The Schedule K-1 reflected that petitioner had a capital account balance of zero at the end of 1990. Petitioner did not receive any payments from Heidelberg & Woodliff with respect to the termination of his interest in the law firm. Heidelberg & Woodliff continued to exist following petitioner's departure.

Petitioner did not receive a Schedule K-1 for 1991. The only distribution petitioner received in 1991 from Heidelberg & Woodliff was from the firm's 401(k) plan.

Salary Reduction Plan Distribution

Petitioner participated in Heidelberg & Woodliff's 401(k) salary reduction plan (the plan) which was administered by a firm committee. The plan's funds were held in trust at Deposit Guaranty National Bank (Deposit Guaranty).

In July 1989, petitioner borrowed $36,510.38 from the plan and executed a promissory note to the plan. Later that month, petitioner borrowed an additional $12,521.04 from the plan, for a total of $49,031.42, and executed a new note to the plan. The note

provided for quarterly repayments of the borrowed funds at 12-percent interest, with the final installment due on July 5, 1994. The note further provided:

> It is agreed that in case of default in any payment of interest, or termination of the employment of maker, or the death of maker, the entire debt shall immediately become due and payable at the option of the holder hereof.

Petitioner never made any repayments of the borrowed funds to the plan.

At the end of 1990, Jessie Homan, an account administrator for Deposit Guaranty, contacted Jerard Pitts, the business manager at Heidelberg & Woodliff, to discuss petitioner's delinquent payments on his loan. Ms. Homan inquired whether the loan should be declared in default and charged off. Mr. Pitts informed Ms. Homan that petitioner was leaving the firm; they decided to charge off the loan in January 1991 in accordance with the terms of the note.

On February 7, 1991, Deposit Guaranty issued a check for $36,424.07 payable to petitioner. The check represented petitioner's balance in the plan, $85,455.49, less the amount of unrepaid funds borrowed from the plan, $49,031.42. The check was mailed to Mr. Pitts and was negotiated by petitioner in 1991. Petitioner failed to roll over any of the distributed funds into another qualified tax-deferred account within 60 days.

A Form 1099-R (Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRA's, Insurance Contracts,

etc.) was issued to petitioner for 1991 reporting a taxable distribution of $85,455.49. The address on the Form 1099 was the same as that on petitioner's notice of termination submitted by Heidelberg & Woodliff to Deposit Guaranty. At no time did Deposit Guaranty personally notify petitioner that his loan was charged off or that the bank deemed the loan repaid.

1991 Federal Tax Return

On his 1991 Federal tax return, petitioner reported adjusted gross income of $69,424. On his Schedule E (Supplemental Income and Loss) under income or loss from partnerships and S corporations, petitioner reported a $121,500 loss from Heidelberg & Woodliff. Petitioner calculated the loss based on his 8.86-percent interest in the firm's accounts receivable, work in progress, cash on hand, and furniture and equipment that he never received upon his departure from the firm.

Petitioner also reported $40,100 in taxable individual retirement account distributions.[1] On his Schedule A, petitioner claimed $33,943 in investment interest expense deductions.

In April 1992, petitioner filed Form 4868 (Application for Automatic Extension of Time To File U.S. Individual Income Tax Return) requesting an automatic 4-month extension of the time to file his 1991 tax return. Petitioner estimated his total 1991 tax

---

[1]    The distributions were actually from the Heidelberg & Woodliff 401(k) salary reduction plan, not from any individual retirement accounts.

liability to be $25,000, which was fully paid through withholdings. In August 1992, petitioner filed Form 2688 (Application for Additional Extension of Time To File U.S. Individual Income Tax Return) seeking an additional 2-month extension of the time to file his 1991 tax return because he was still awaiting records necessary to complete his return from Heidelberg & Woodliff. Petitioner requested a new filing deadline of October 15, 1992, which was approved by the Internal Revenue Service (IRS). Petitioner mailed his 1991 tax return no later than October 15, 1992, and it was received on October 19, 1992, by the IRS Service Center in Memphis, Tennessee.

Notice of Deficiency

In the notice of deficiency, respondent disallowed petitioner's $121,500 loss claim from Heidelberg & Woodliff because he could not establish his basis in the partnership. Respondent determined that petitioner received an $85,455 taxable distribution from Heidelberg & Woodliff's salary reduction plan and accordingly increased petitioner's taxable income by $40,355. Moreover, respondent disallowed all but $211 of petitioner's $33,943 investment interest expense deductions on the basis that petitioner's offsetting investment income was only $211. Respondent also determined that petitioner had only substantiated $29,443 of the interest expenses.

Respondent also determined (1) a 25-percent addition to tax for failure to timely file the 1991 tax return pursuant to section 6651(a)(1) on the basis that the estimated total tax liability reported on Form 4868 was unreasonable, and thus the automatic 4-month extension for filing the tax return was void, and (2) an accuracy-related penalty for substantial understatement of tax pursuant to section 6662.

OPINION

## Issue 1.  Loss From Law Firm Partnership

The first issue for decision is whether petitioner was entitled to a $121,500 loss deduction due to his withdrawal from the Heidelberg & Woodliff law firm partnership.  Petitioner asserts that the $121,500 loss represents the value of accounts receivable and work in progress, along with other assets, he "left on the table" when he departed the law firm.  Respondent disagrees, contending that (1) petitioner left the law firm in 1990, and thus there was no event in 1991 (the year in issue) upon which petitioner could recognize a loss, and (2) assuming arguendo that petitioner left the law firm in 1991, petitioner failed to prove his basis in the partnership.  For the reasons set forth below, we sustain respondent's determination with respect to this issue.

In order to prevail and recognize a loss, petitioner must show that upon withdrawing from the law firm his basis in the firm exceeded the amount he received. Sec. 731. See <u>Harris v.</u>

Commissioner, T.C. Memo. 1988-195; Lynch v. Commissioner, T.C. Memo. 1982-305; Abraham v. Commissioner, T.C. Memo. 1970-304. A partner's adjusted basis in his partnership interest is determined under section 705.

A partner's initial basis in a partnership is determined by the amount of money contributed and the adjusted basis of any other type of property contributed. Sec. 722. The partner's basis in the partnership is then adjusted upward for the partner's distributive share of separately stated income items, and downward by distributions of money (including the relinquishment of liabilities) or the adjusted basis of other property distributed, and the partner's distributive share of losses and nondeductible expenses. Sec. 705; La Rue v. Commissioner, 90 T.C. 465, 477 (1988).

Petitioner claims a $121,500 basis[2] in the partnership due to the "value" of his interest in accounts receivable and work in progress for work he performed for clients of the law firm. Petitioner explains on brief:

>      A partner's basis for his interest in a
> partnership depends on how he acquired it. It
> may consist of the amount of cash he

---

[2]    At trial, petitioner calculated his basis in his partnership interest by adding the amount of accounts receivable and costs associated with petitioner's clients ($93,744.68) with current work in progress ($65,485.20), for a total of $159,229.88. Petitioner then applied a collection rate which reduced the total figure to $121,500.

contributed to the property [sic], it may consist of property contributed to the partnership on the amount paid to a retiring partner for his interest.

The testimony and exhibits show that Petitioner purchased an interest in 1968 and paid a portion of debt due to retiring partners after the 1985 consumption of 4/7 of the former junior partners' debt to the named partners who had sold their interests.

The contribution to the partnership by the Petitioner of work in process and accounts receivable are contributions of property. This is recognized by IRC § 724 which deals with unrealized receivables and inventory. Work in process is the inventory of a law firm and accounts receivable are unrealized receivables. The value of those two items alone produced and contributed by Petitioner are significantly more than the deduction claims.

Petitioner's reasoning is flawed. Petitioner is not entitled to a deduction for failure to realize anticipated income. Hort v. Commissioner, 313 U.S. 28 (1941). Petitioner has not acquired a basis in the accounts receivable and work in progress under section 705 unless the amounts of these items had been reflected in the income of the partnership and in petitioner's distributive share in 1990 or in prior years. Holman v. Commissioner, 66 T.C. 809, 816-817 (1976), affd. 564 F.2d 283 (9th Cir. 1977). But as a cash basis taxpayer, Heidelberg & Woodliff's accounts receivable and work in progress are not reflected in the partnership's income (nor

in petitioner's distributive share thereof) until collected;[3] consequently, these items do not affect petitioner's capital account or his basis in the partnership. See Thatcher v. Commissioner, 61 T.C. 28, 36 (1973), affd. in part and revd. in part on other grounds 533 F.2d 1114 (9th Cir. 1976); Raich v. Commissioner, 46 T.C. 604, 610 (1966); Pinson v. Commissioner, T.C. Memo. 1990-234.

To the extent that petitioner may have had other sources which affected his basis in the partnership (such as capital contributions), he has failed to prove such basis. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). And in this regard, we are mindful that when the law firm adopted a new partnership agreement in the late 1980's, partners under the old partnership agreement (which presumably included petitioner) were bought out by the partnership, and partners under the new partnership agreement did not make capital contributions. Additionally, petitioner has failed to adjust his claimed basis in the partnership by the distributive share items and cash distributions made by the partnership that were reported on Schedule K-1 for 1990, or the deemed distribution of any partnership liabilities assumed by the

---

[3] Petitioner conceded that neither he nor the firm received or reported any income from accounts receivable and work in progress during 1990.

partnership upon petitioner's retirement.  See secs. 705, 752(b);

Lynch v. Commissioner, supra; Abraham v. Commissioner, supra.

Thus, we hold that petitioner is not entitled to a $121,500 loss deduction due to his withdrawal from the Heidelberg and Woodliff partnership because he failed to prove that he had any basis in the partnership.

However, assuming arguendo that petitioner did have basis in the Heidelberg & Woodliff partnership when he left the law firm, petitioner has not shown that he is entitled to a loss deduction in 1991.

Section 1.736-1(a)(1)(ii), Income Tax Regs., provides:

A partner retires when he ceases to be a partner under local law.  However, for purposes of subchapter K, chapter 1 of the Code, a retired partner or a deceased partner's successor will be treated as a partner until his interest in the partnership has been completely liquidated.

A retiring partner's entire interest in a partnership is terminated through the liquidation of the partner's interest by means of a distribution or series of distributions to the partner by the partnership.  Secs. 736(b), 761(d); sec. 1.761-1(d), Income Tax Regs.  The liquidation is complete upon the final distribution to the partner.  Sec. 1.761-1(d), Income Tax Regs.

Here, the parties stipulated that petitioner left the firm at the end of 1990; indeed, petitioner testified that he was not a partner after December 31, 1990.  Petitioner introduced no evidence

that under Mississippi law he was a partner after December 31, 1990.[4]  Hence, for Federal tax purposes, petitioner is deemed to have retired from the partnership on December 31, 1990.

Petitioner claims that he was entitled to a liquidating distribution in 1990 which he never received and which could not have been discovered from the firm's financial records until their completion in 1991.  Thus, he asserts he is entitled to recognize a tax loss in 1991.  Petitioner's argument must fail.  Although petitioner may have believed he was entitled to a liquidating distribution in exchange for his partnership interest, the fact is he never received one in 1991[5] nor was he entitled to one.  Indeed, Luther Thompson, a partner in Heidelberg & Woodliff during petitioner's tenure with the firm, testified that the firm's partnership agreement, as amended in the late 1980's, did not

---

[4]    Mississippi law provides that retiring partners may seek an accounting of their interests in their former partnerships.  Miss. Code Ann. secs. 79-12-83, 79-12-85 (1989).

[5]    Heidelberg & Woodliff's Schedule K-1 issued to petitioner indicates that petitioner's share of partnership liabilities at the end of 1990 was $69,756.  Luther Thompson, a partner at Heidelberg & Woodliff, testified that he could not vouch for the accuracy of that figure because it was handwritten and not typewritten like the remainder of the schedule.  To the extent petitioner was relieved of partnership liabilities, such would constitute a distribution of money to petitioner by the partnership and hence a deemed liquidating distribution at the end of 1990. Sec. 752(b); see O'Brien v. Commissioner, 77 T.C. 113 (1981); Pietz v. Commissioner, 59 T.C. 207 (1972); Stilwell v. Commissioner, 46 T.C. 247 (1966).

provide for capital contributions or liquidating distributions, but only granted profit interests in the partnership.

Because petitioner received no liquidating distributions in 1991, petitioner's gain or loss in the partnership must be calculated as of the time he withdrew from the partnership on December 31, 1990. See sec. 1.736-1(a)(5), Income Tax Regs. Consequently, petitioner cannot deduct in 1991 the amount of any loss due to his withdrawal from the Heidelberg & Woodliff partnership.

Issue 2. Salary Reduction Plan Distribution

The second issue for decision is whether petitioner must include $85,455 in income as a taxable distribution from the Heidelberg & Woodliff salary reduction plan upon his termination from the law firm. Petitioner contends that he was not properly notified of the cancellation of the note and that equity requires leniency. Respondent asserts that under the terms of the plan and the note, there were three separate grounds for requiring immediate repayment of petitioner's note and treating it as having been repaid and satisfied in 1991: (1) Petitioner failed to make the required quarterly payments, and thus, was in default of payment; (2) petitioner's employment with Heidelberg & Woodliff had terminated; and (3) because petitioner's plan balance was to be distributed to him in 1991, the plan's terms required that the note be paid first. We agree with respondent's assertions.

The amount of any distribution to a taxpayer from a qualified pension plan described in section 401(a) generally is includable in gross income in the year of distribution. Sec. 402(a)(1). Such distribution includes the outstanding balance of any loan at the time of the beneficiary's separation from service or default on the note. Murtaugh v. Commissioner, T.C. Memo. 1997-319; see also Minnis v. Commissioner, 71 T.C. 1049, 1056 (1979); Dean v. Commissioner, T.C. Memo. 1993-226. However, if a portion of the amount distributed is rolled over to another qualified pension plan within 60 days following receipt of the distribution, that portion is not includable in gross income in the year of distribution. Sec. 402(a)(5).

If the taxpayer fails to roll over distributed funds within 60 days, and the distribution is made before the date the taxpayer attains the age of 59-1/2, and none of the other exceptions in section 72(t)(2) applies, the tax on the distribution is increased by an amount equal to 10 percent of the portion includable in gross income. Sec. 72(t).

Petitioner was 54 years old at the time he received his distribution from Heidelberg & Woodliff's salary reduction plan; he did not roll over such funds into another qualified plan. See Rodoni v. Commissioner, 105 T.C. 29, 32-34 (1995); Clark v. Commissioner, 101 T.C. 215, 224-225 (1993). He unquestionably received and negotiated the $36,424.07 distribution check from

Deposit Guaranty in 1991. The check represented petitioner's balance in the plan, $85,455.49, less the amount of unpaid funds borrowed from the plan, $49,031.42. Thus, the check included a deemed distribution of the loan's outstanding balance. See Murtaugh v. Commissioner, supra.

To conclude, the entire $85,455.49 is includable in petitioner's 1991 gross income as a taxable distribution from Heidelberg & Woodliff's salary reduction plan, and petitioner, having failed to show that any of the exceptions in section 72(t)(2) apply, is liable for the additional 10-percent tax for early distributions imposed by section 72(t).

Issue 3.  Interest Expense Deduction

The third issue for decision is whether petitioner is entitled to deduct $33,943 for interest expenses. Petitioner argues that such amount, to the extent substantiated,[6] should be allowed pursuant to section 163 as interest incurred in the conduct of a trade or business. Respondent asserts that petitioner's interest expense deductions are for investment interest and therefore are limited to net investment income pursuant to section 163(d).

Section 163 generally allows the deduction of interest paid on indebtedness during the taxable year. Section 163(d)(1) limits the deduction for investment interest to the extent of net investment

---

[6]      Respondent determined in the notice of deficiency that petitioner had substantiated $29,443 of the interest expenses.

income. Investment interest means interest paid on indebtedness allocable to property held for investment. Sec. 163(d)(3)(A). Property held for investment includes any interest held by the taxpayer involving the conduct of a trade or business which is not a passive activity and with respect to which the taxpayer did not materially participate. Sec. 163(d)(5)(A)(ii). Net investment income means investment income (gross income from property held for investment and net gain from the disposition of property held for investment) over investment expenses. Sec. 163(d)(4)(A) and (B).

On his 1991 Federal tax return, petitioner reported that the interest expenses incurred were investment interest. In his petition and on brief, petitioner described the interest as incurred from business loans. At trial, petitioner described the interest as incurred on loans borrowed to support his interest in an automobile dealership.

Petitioner offered no evidence of his involvement in the automobile dealership and thus failed to sustain his burden with respect to the nature of the interest paid. Rule 142(a); Cannizzaro v. Commissioner, T.C. Memo. 1982-633; see also King v. Commissioner, 89 T.C. 445, 456-467 (1987). Consequently, we hold that petitioner is entitled to deduct investment interest expenses only to the extent of net investment income pursuant to section 163(d).[7]

---

[7] In the notice of deficiency, respondent allowed $211 of
(continued...)

Issue 4.  Failure To File Addition to Tax

The fourth issue for decision is whether petitioner is liable for an addition to tax for failure to timely file his 1991 Federal tax return.  Petitioner claims that he timely filed the return following two extensions granted by the IRS.  Respondent contends that any extensions granted were invalid because petitioner failed to make a bona fide and reasonable attempt to estimate his proper tax liability.

Section 6651(a)(1) imposes an addition to tax of 5 percent of the amount of tax due per month for each month that a tax return is not timely filed, not to exceed 25 percent.  An exception is made for reasonable cause not due to willful neglect.

Petitioner's 1991 Federal tax return was due on April 15, 1992, but petitioner received an automatic 4-month extension through his filing of Form 4868.  In August 1992, petitioner sought and received an additional 2-month extension to October 15, 1992. Petitioner subsequently filed his return on October 15, 1992.

Petitioner reported a total 1991 estimated tax liability of $25,000 on Form 4868, which was approximately one-third of the final tax liability of $75,354 determined by respondent. Respondent argues that petitioner failed to estimate properly his

---

[7](...continued)
investment interest expenses. This figure was based on $157 of unreported dividend income, $36 of reported interest income, and $18 of unreported interest income.  Due to respondent's concession regarding the $157 of dividend income, however, the amount of net investment income must be reduced to $54.

tax liability on Form 4868 when he filed for the automatic extension, and thus such extension is invalid.

One of the requirements for the automatic extension of time to file an individual tax return is the proper estimation of the final tax liability for the taxable year. Sec. 1.6081-4(a)(4), Income Tax Regs. The failure to estimate properly the final tax liability on Form 4868 can invalidate the automatic extension and subject the taxpayer to an addition to tax pursuant to section 6651(a)(1) for failure to timely file the return. Crocker v. Commissioner, 92 T.C. 899 (1989); see also Berlin v. Commissioner, 59 F.2d 996 (2d Cir. 1932), affg. a Memorandum Opinion of this Court.

To establish a proper estimate of the tax liability for purposes of the automatic extension, the taxpayer must make "a bona fide and reasonable estimate of his tax liability based on the information available to him at the time he makes his request for extension." Crocker v. Commissioner, supra at 908. The taxpayer must determine his tax liability generally, but carefully. Id. Further, the taxpayer must make a bona fide and reasonable attempt to locate, gather, and consult information that will enable him to make a proper estimate of his tax liability. Id.

Petitioner testified that he acted reasonably in estimating his tax liability and utilized the information he had available to him. According to petitioner's request for a second extension of time to file his 1991 return, he was waiting for records from Heidelberg & Woodliff that were necessary to prepare the return.

The failure to obtain the necessary information when filing Form 4868, however, does not lead to the conclusion that petitioner properly estimated his tax liability.  See Arnaiz v. Commissioner, T.C. Memo. 1992-729.

Petitioner knew that he terminated his interest in Heidelberg & Woodliff as of the end of 1990; he also knew that he did not receive a Schedule K-1 for 1991 from the firm.  Moreover, he was a partner in the firm when the partnership agreement was amended to eliminate partner capital contributions upon admission and liquidating distributions upon retirement.  And he should have been aware that no deduction is allowable for leaving his share of the law firm's anticipated but not realized income (i.e., the firm's accounts receivable and work in progress) on the table.  See Hort v. Commissioner, supra.

As to the tax consequences of the distribution from the Heidelberg & Woodliff salary reduction plan, petitioner claims that he never received the Form 1099 issued to him reflecting such distribution.  Yet, petitioner never inquired as to why he did not receive a Form 1099, nor did he inquire as to the status of the note executed in favor of the plan for the loan proceeds he borrowed.  Even a cursory review of the note would have alerted petitioner to the fact that his termination from the firm would cause an acceleration of the debt; moreover, he knew that he was in default on the note.  Additionally, the notice of termination from Heidelberg & Woodliff states that petitioner is to receive 100

percent of his vested interest in the partnership's salary reduction plan, which should have indicated to him that the distribution was not limited to the proceeds from the check he received and negotiated.

Petitioner failed to make a bona fide and reasonable estimate of his tax liability when he filed Form 4868. See Crocker v. Commissioner, supra at 908. He underestimated his tax liability by two-thirds. Cf. Boatman v. Commissioner, T.C. Memo. 1995-356. His failure to obtain the necessary information to estimate properly his tax liability, as well as his failure to properly investigate the law regarding his tax issues, does not excuse the error in petitioner's estimate. Arnaiz v. Commissioner, supra. Petitioner's mistaken belief that he was entitled to a loss deduction for the value of accounts receivable and work in progress "left on the table" when he departed Heidelberg & Woodliff does not constitute reasonable cause for failure to make a proper estimate. See Mayhew v. Commissioner, T.C. Memo. 1994-310. Thus, we sustain respondent's voiding of the tax filing extensions obtained by petitioner.

Because petitioner's reliance on the filing extensions constituted his sole defense to the section 6651 (a)(1) addition to tax, petitioner has not shown that his failure to timely file his 1991 tax return was due to reasonable cause and not willful neglect. See Crocker v. Commissioner, supra at 913. Accordingly, we hold that petitioner is liable for the section 6651(a)(1) 25-

percent addition to tax for failure to timely file his 1991 tax return.

Issue 5. Accuracy-Related Penalty

The final issue for decision is whether petitioner is liable for the accuracy-related penalty for the substantial understatement of tax pursuant to section 6662. Petitioner asserts that he had reasonable cause for the understatement of tax.

Section 6662 imposes an accuracy-related penalty equal to 20 percent of any portion of an understatement attributable to a substantial understatement. A substantial understatement means an understatement which exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1). The understatement is reduced by that portion of the understatement for which the taxpayer had substantial authority or for which the taxpayer adequately disclosed the relevant facts in the return. Sec. 6662(d)(2)(B). Additionally, no penalty is imposed with respect to any portion of an understatement as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1).

Petitioner provided no disclosures in his return and supplied this Court with no substantial authority for his positions. See sec. 1.6662-4(d)(3), Income Tax Regs. Also, he failed to prove that his effort to assess his proper tax liability was sufficient to establish reasonable cause and good faith. See sec. 1.6664-

4(b), Income Tax Regs.  Thus, we hold that petitioner is liable for the accuracy-related penalty for the substantial understatement of tax.

To reflect the foregoing and the concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.